[No. 18246.  *En Banc.*  May 9, 1924.]

LAWRENCE PAVISH, *Appellant,* v. MAX MEYERS *et al.,*
*Respondents.*[1]

ARREST (6)—WITHOUT WARRANT—BREACH OF THE PEACE—ABUSE
OF PEACE OFFICER.  Openly accusing a police officer of being a
peddler of whiskey, tends to a breach of the peace and warrants
an arrest without a warrant.

FALSE IMPRISONMENT (4, 5)—JUSTIFICATION FOR ARREST—PROVO-
CATION BY OFFICER.  A police officer who provokes a citizen into
making accusations of the officer tending to a breach of the peace
and then arrests him without a warrant, may be liable for damages
for wrongful arrest; it being for the jury to determine whether the
policeman was guilty of provoking the cause for the arrest, making
it error to grant a nonsuit.

SAME (4, 5)—EVIDENCE—ADMISSIBILITY.  In an action against a
policeman for wrongful arrest, on an issue as to whether defendant
provoked the cause of the arrest by remarks reflecting on plaintiff's
business, it is error to exclude evidence tending to show that de-
fendant harbored ill feeling toward the plaintiff.

MUNICIPAL CORPORATIONS (76, 79)—OFFICERS—CHIEF OF POLICE—
LIABILITY FOR ACTS OF DEPUTY—UNLAWFUL ARREST.  The chief of
police is not liable for a wrongful arrest by a policeman, especially
where the police officers are under civil service rules and the chief
has only a limited power of appointment.

SAME (75, 79)—CHIEF OF POLICE—LIABILITY FOR ACTS OF DEPUTY—
CHARTER PROVISIONS.  A city charter providing that the chief of
police shall have, in the discharge of his duties, like powers and be
subject to like responsibility as the sheriff of the county, does not
render him liable for the acts of policemen.

OFFICERS (53)—BONDS—LIABILITY OF SURETY.  The chief of police
not being liable for a wrongful arrest by a police officer, the surety
on his official bond is not liable.

Appeal from a judgment of the superior court for
King county, Reynolds, J., entered February 24, 1923,
upon granting a nonsuit, dismissing an action for false
imprisonment.  Affirmed as to defendant Severyns; re-
versed as to defendant Meyers.

[1]Reported in 225 Pac. 633.

*F. B. Carpenter* and *C. A. Schneider*, for appellant.

*Thomas J. L. Kennedy, George A. Meagher*, and *Ray Dumett*, for respondents Meyers and Severyns.

*John W. Heal, Jr.*, for respondent New Amsterdam Casualty Company.

BRIDGES, J.—The plaintiff seeks damages because of his alleged unlawful and unwarranted arrest by the defendant Meyers.

The plaintiff owns and operates a fish market in one of the store rooms fronting on a street in the city of Seattle; the defendant Meyers is a police officer of that city; the defendant Severyns is its chief of police, and the New Amsterdam Casualty Company furnished the official bond for the chief of police.

The plaintiff's testimony tended to show that, on a certain date, the defendant Meyers, while on duty and while passing the plaintiff's place of business, and in the presence of other persons, held his hand over his nose and said, "Oh, that place smells!" or words to that effect. He then went down the street some fifty or one hundred feet and immediately returned, and while again passing plaintiff's place of business made similar remarks. At that time the plaintiff said to Meyers that his place of business did not smell bad, and that selling fish was better than peddling whiskey, as the officer did, or words to that effect. Immediately the officer arrested him. He did not have any warrant for that purpose. The trial court granted a motion for nonsuit, and plaintiff has appealed from a judgment of dismissal.

One of the ordinances of the city of Seattle provides that any person who is guilty of conduct which tends to disturb the public peace shall be guilty of a misdemeanor. The fact that officer Meyers made the arrest

without a warrant therefor is immaterial under the facts of this case, because the appellant's alleged offense was in the presence of the officer, and if an offense at all, it was a misdemeanor. It is a general rule of law that a peace officer may, without a warrant therefor, arrest one who, in his presence, breaches the peace or threatens so to do. 25 Cyc. 465. Appellant claims that his conduct was not such as tended to breach the peace. But in this respect, speaking generally, we cannot agree with him. He openly accused officer Meyers of being a peddler of whiskey, and that, of course, is a serious offense under the laws of this state. Such a charge, standing alone, would tend to breach the peace and justify arrest. That words of a degrading character, addressed to another, may tend to breach the peace is well settled by the authorities. While there appears to be some conflict on the question, the great weight of authority supports the view we have taken. *Delk v. Commonwealth,* 166 Ky. 39, 178 S. W. 1129, Ann. Cas. 1917C 884, L. R. A. 1916B 1117, and note commencing on page 889; *Elmore v. State,* 15 Ga. 461, 83 S. E. 799; *Davis v. Burgess,* 54 Mich. 514, 20 N. W. 540; *Heath v. Hagen,* 135 Iowa 495, 113 N. W. 342; *State v. Brumley,* 53 Mo. App. 126.

Nor, in our opinion, does it alter the situation that the degrading or abusive words were addressed to a peace officer. There is a conflict of authority also upon this question. Two cases we have found take the position that offensive words addressed to a peace officer do not tend to breach the peace, because it is the sworn duty and business of the officer, not only not to breach the peace himself, but, on the contrary, to keep others from so doing, the general idea of these cases apparently being that, because a man is an officer of the peace, he must not, and will not, permit abuse of himself to so rouse him as that he will, or is likely to,

breach the peace: See *People v. Lukowsky,* 94 Misc.
Rep. 500, 159 N. Y. Supp. 599; *Salem v. Coffey,* 113
Mo. App. 675, 88 S. W. 772, 93 S. W. 281. The first case
cited is exceedingly brief, gives no reasons and cites
no authority. In the second case cited, there was a
dissenting opinion, and, besides, it was later overruled
by the same court. Those cases which hold to a con-
trary doctrine are based on the principle that, although
it is the duty of a peace officer to preserve the peace,
yet he is like other human beings, and under great
stress of abuse may forget his official duty and fight
back. He does not lose his human nature simply be-
cause he wears a star. But if he, for the time being,
observe the injunction of his oath, the offense still
tends to breach the peace, because, once off duty and
being a private citizen, he may resent the abuse and
thus violate the peace. The cases we have been able
to find so holding are: *Davis v. Burgess, supra; War-
wick v. State,* 17 Ind. App. 334, 46 N. E. 650; *Elmore v.
State, supra; De Soto v. Hunter,* 145 Mo. App. 430. In
the latter case, the holding in the prior case of *Salem
v. Coffey, supra,* was severely criticized and in effect
overruled. In *Davis v. Burgess, supra,* Justice Sher-
wood, writing in a case where the facts were very simi-
lar to those here, said:

"It can make no difference that the officer was made
the subject of the offender's wrong acts and conduct
on that occasion. Officers are entitled to the same pro-
tection as other persons. It was the offense against
the public which the people could punish, and the officer
only acted for them in making the arrest. He had no
personal interest in the matter."

In the case of *Elmore v. State, supra,* the court said:

"Nevertheless, an officer is entitled to the same pro-
tection from opprobrious words or abusive language
which the law affords to the private citizen, and in fact
it would appear that an officer would be more entitled

to such protection because of the very fact that he is prohibited from protecting himself by force against any insults coming from one legally in his custody. Then, too, an officer should not be tempted to disobey the law, which wisely prevents him from replying with a blow to the vilest of verbal affronts from one in his legal custody, by the consciousness that, because of his assumption of the obligations and restraints of office, he has been shorn of that protection which is afforded to the humblest private citizen, and that even the grossest insults offered to him under such conditions must go unredressed, unless forcibly resented at the time. . . . Again, though, on account of circumstances or obligations imposed by office, one may not be able at the time to assault and beat another on account of opprobrious words or abusive language, the words or language might still tend to cause a breach of the peace at some future time, when the person to whom they were addressed might be no longer hampered by physical inability, present conditions, or official position.''

But conceding the appellant's conduct was such, without any other showing of facts, to justify his arrest, yet the court was in error in nonsuiting him. There was testimony tending to show that respondent Meyers provoked appellant into calling him a peddler of whiskey. In a case in which the public is interested, such as a trial for a breach of the peace, it may be that proof of provocation would be foreign to the issue, but it must be kept in mind that this is a civil suit in which the public has no interest. Here appellant is claiming damages because of his arrest. The question is not whether he is guilty of creating a breach of the peace, but whether, under all the circumstances, officer Meyers was so justified in making the arrest as to relieve him of damages. It would be an unfortunate state of affairs if a policeman could provoke another to commit a breach of the peace, arrest him and then, when sued

for damages for the arrest, defeat the action by simply showing that, because the other was breaching the peace, the arrest was lawful and justified and that provocation would be immaterial and beside the question. Such a doctrine would permit the officer to take advantage of his own wrong.. Under such a theory, police officers would have it in their own power, under color of authority, to reap private revenge. If a policeman desired, out of malice, to arrest a private citizen, all he would have to do would be to use such abusive and contemptuous language to that person as that he would, because of his human nature, resent the remarks, and then the officer could legally arrest him because he had breached the peace, and defend, in an action for damages, on the ground that the arrest was lawfully made.

What was said in the case of *City of Georgetown v. Scurry,* 90 S. C. 346, 73 S. E. 353, is pertinent to this question:

"There is one point on which we think the recorder committed a fatal error. There was evidence on the part of the defendant from which the jury might have drawn the inference that the abusive language of the chief of police, uttered entirely outside the course of his duty, provoked the defendant to use language no more disorderly or abusive than that used by the officer. A police officer who goes out of the course of his duty, and speaks so abusively of a citizen, in his presence, as to elicit language in reply which is no more disorderly, either in substance or in manner, than the language of the officer provoking it, is not justified in arresting, without warrant, the citizen for disorderly conduct in using the abusive language."

We are not saying that officer Meyers was guilty of provoking the cause for the arrest, but merely that there was testimony tending to show that fact, and the trial court should have submitted this phase of the case

to the jury. We have said that, between himself and the public, the appellant was guilty of such conduct as tended to breach the peace and probably justified his arrest, but in this action between himself and the officer arresting him, he had a right to show, if he could, that his conduct was brought about by the offensive conduct of the officer himself. It follows that the trial court was in error in not permitting the facts to be shown for the purpose of showing that the conduct of the officer provoked that of appellant. The latter was entitled to show, as he offered but was denied the privilege, that officer Meyers harbored ill feeling towards him. Plainly, testimony of this character would tend to enlighten the jury on the question of whether the officer's conduct tended to provoke that of the appellant. If, under the testimony, the jury should believe that respondent Meyers so acted as to be the cause of appellant's conduct and to justify it, then, so far as this action is concerned, the arrest would be wrongful and unjustified.

The next question to be discussed is whether the chief of police of the city of Seattle can be held liable if a verdict and judgment should go against officer Meyers.

This court has held that a sheriff is liable for the misconduct of his deputies. *Kusah v. McCorkle,* 100 Wash. 318, 170 Pac. 1023, L. R. A. 1918C 1158; *Greenius v. American Surety Co.,* 92 Wash. 401, 159 Pac. 384, L. R. A. 1917F 1134. In fact, our statute expressly so provides, for § 4160, Rem. Comp. Stat. [P. C. § 1797], says:

"Every sheriff may appoint as many deputies as he may think proper, for whose official acts he shall be responsible to the amount of his bond, and may revoke such appointments at his pleasure; and persons may also be deputed by the sheriff in writing to do particu-

lar acts; and the sheriff shall be responsible on his official bond for the default or misconduct in office of his deputies.''

But the courts have very generally drawn a distinction between a sheriff and a chief of police, holding that the deputies of the former are selected by the sheriff and act purely as his representatives, but that police officers are generally not selected exclusively by the chief of police, and are themselves officers and do not act for the chief of police in the performance of their official duties. In *Casey v. Scott,* 82 Ark. 362, 101 S. W. 1152, 18 Am. St. 80, 12 A. & E. Annot. Cas. 184, the court said:

''A sheriff is responsible for his deputies, for they are acting in his private service in his name and stead, and are only public officers through him. A chief of police may select a police force, but he is not responsible for their acts, as each policeman is a public servant himself.''

See, also, note following the case cited.

In the case of *Michel v. Smith,* 188 Cal. 199, 205 Pac. 113, the court, after laying down the rule that a sheriff is liable for the acts of his deputies, says:

''A different rule prevails in the case of the chief of a municipal police department. He may even be charged with the duty of selecting the members of the force, but he is not responsible for their acts, unless he has directed such acts to be done, or has personally co-operated in the offense, for each policeman is, like himself, a public servant.''

See, also, note found in 12 A. L. R. 980; 1 Dillon, Municipal Corporations (5th ed.), § 442.

The rule announced is particularly applicable where police officers are under civil service regulations and the chief of police has only a limited power of appointment. Such a condition exists in the city of Seattle.

It would be a very harsh doctrine to hold a chief of police liable for the misconduct of a policeman whom he has not had a free hand in appointing. See *Michel v. Smith, supra.* In this case there is nothing to show that the respondent Severyns, who is the chief of police, had anything whatever to do with the arrest in question.

It is contended, however, that the charter of the city of Seattle provides that the chief of police shall be liable under circumstances such as are discussed here. It provides that "he (chief of police) shall have in the discharge of his duties like powers and be subject to like responsibilities as the sheriff of King county in similar circumstances. . . ." This provision is a part of the charter with reference to the police department and concerning the duties of the chief of police and policemen. It is provided that the chief of police shall be the manager of the police department, under the general control of the mayor, and he shall maintain peace and quiet in the city. Manifestly, the provision which we have quoted was not for the purpose of making the chief of police liable for the acts of policemen. It does nothing more than liken his general duties and obligations to those of the sheriff of King county. If it had been the intention to hold him liable for the acts of policemen, such idea would doubtless have been exactly stated, as has been done in our statutes with reference to sheriffs.

This idea is very forcefully indicated by art. 17 of the charter, which is with reference to official bonds, and provides that "it shall be one condition of the bond of the chief of police that he shall pay all such actual damages as may be sustained by any person arrested without a warrant, or by reason of any false and unlawful imprisonment *by or under the direction of the*

*chief of police.''* Indeed, the bond itself states that it shall be liable to any person arrested without a warrant or for unlawful imprisonment ''by or under the direction of the chief of police.''

But probably a better reason can be given for the non-liability of the chief of police. As stated by nearly all of the authorities, a sheriff is liable for the acts of his deputies, because ''they are acting in his private service, in his name and stead, and are only public servants through him.'' But the policeman is, ''like the chief of police, a public servant,'' and his acts are those of a public servant, and not those of the chief of police, except, of course, where the latter has directed the act to be performed. Since, therefore, the respondent Meyers acted for the public and not for the chief of police, the latter cannot be held liable, except by virtue of express charter provision, which we find to be absent here. It, of course, follows from what we have said that the bond given by the chief of police is not liable.

The judgment, in so far as it affects William B. Severyns, the chief of police, and his bondsmen, the New Amsterdam Casualty Company, is affirmed, but is reversed as to the respondent Meyers, in order that a trial may be had in accordance with the theory here announced.

MAIN, C. J., MACKINTOSH, HOLCOMB, TOLMAN, PEMBERTON, MITCHELL, and PARKER, JJ., concur.