[No. 19063. Department Two. April 3, 1925.]

## CLYDE L. NUNN, *Respondent*, v. CHARLES A. TURNER et al., *Appellants*.[1]

MUNICIPAL CORPORATIONS (75, 76)—OFFICERS—CHIEF OF POLICE—BONDS—LIABILITY OF SURETY. The chief of police and the surety on his official bond are liable for false imprisonment, where he directed police officers to arrest one accused of unlawful possession of liquor, and ordered his detention "for investigation," without any charge made against him, after a search of his premises disclosed no liquor thereon.

SAME (76, 79)—ACTS OF DEPUTY. In an action for false imprisonment by the chief of police, he cannot escape liability from the fact that he was not personally present at the time police officers carried out his commands strictly as given.

FALSE IMPRISONMENT (9)—DAMAGES—EXCESSIVE VERDICT. A verdict for $500 damages for false imprisonment during one night in a cell in the county jail is excessive and should be reduced to $100, where it is not shown that plaintiff suffered any ill effects.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered July 23, 1924, upon

[1]Reported in 234 Pac. 443.

the verdict of a jury rendered in favor of the plaintiff for $572.40, in an action for false imprisonment. Reversed, unless $400 is remitted.

*Louis A. Merrick,* for appellants.
*Stiger & Kaune,* for respondents.

HOLCOMB, J.—In what would appear to us to be probably a laudable attempt to enforce the law against the unlawful disposition or possession of intoxicating liquor against respondent, appellant Turner procured a search warrant of the premises of respondent, and sent police officers to search the premises and arrest respondent. Appellant Turner was at the time commissioner of public safety of Everett, and according to the charter of Everett, art. IV, subd. C, the commissioner of safety of Everett had general charge and control of the police and other departments. Under § 23 of the charter, the commissioner exercises general supervision and control of all affairs and property of his department. Under § 37 of the charter, the commissioner is required to furnish a good and sufficient bond by a surety company in a certain sum, conditioned for the faithful performance of his duties.

The police officers who were sent to make the search testified that, notwithstanding the fact that no intoxicating liquor was found on the premises of respondent, the officer in whose charge the search warrant was given stated to respondent and to them that the instructions of the chief (appellant Turner) were to bring respondent in, that is, bring him to the police station and jail. At about 10:30 o'clock p. m., respondent was taken from his residence by the officers to the police station of Everett and detained in the city jail thereafter for about sixteen hours, without a warrant having been issued for his arrest. The next afternoon he was discharged upon a writ of habeas

corpus in the superior court of the county. He was compelled to pay out $72.40 as attorney's fees and as costs of the action to obtain his release on habeas corpus.

In his cause of action against appellants for damages in the sum of $1,072.40, he alleged his arrest without warrant, under the instructions of appellant Turner, by the police officers, his detention in the city jail for sixteen hours without cause, and without any right or authority of law, and that the cell in which he was confined in the city jail was cold, lacked adequate bed covering, and that by reason thereof he suffered from cold and lack of sleep. He alleged the payment of $72.40 costs and attorney's fees to secure his release. No other special or consequential damages were alleged. The amended complaint also alleged the suretyship of appellant United States Fidelity & Guaranty Company, the condition of the surety obligation that Turner should well and truly perform all the duties required of him by law as commissioner of public safety of the city of Everett, and faithfully discharge all duties which may be required of him by any law subsequent to the execution of the bond. It was also alleged that the acts of appellant Turner, as such commissioner and chief of police, were in violation of the conditions of the bond as such commissioner, and that appellant Turner did not well and truly faithfully perform his duties as such commissioner.

The jury, notwithstanding the evidence introduced by appellants to the effect that respondent was a frequent violator of the prohibition laws, had been arrested and found not guilty at various times, had also been found guilty in Whatcom county (see *State v. Nunn*, 122 Wash. 437, 210 Pac. 771), of a misdemeanor, and the constant rumors and reports which reached the police department and the commissioner

of such violations by respondent, found in favor of respondent in the sum of $572.40, upon which verdict judgment was rendered.

The evidence tendered by appellant and the proof adduced in support thereof was justification for the arrest without a warrant, upon the theory that the respondent had committed, or was about to commit, one or more felonies, to wit: bootlegging and conducting a joint. Appellant Turner testified that he had long had the belief, amounting to a conviction, that there was a continuing felony at 3619 Colby Avenue, which was the residence of respondent. Respondent had lived at that location for about eight years. A number of witnesses besides police officers, among them near neighbors of respondent, testified that the reputation of his place was that it was a place where liquor was sold, and his reputation was that of a bootlegger. At the time of his arrest, respondent protested and demanded to know why they were taking him, and was told by the police officer having charge of the search warrant and raid that the old man, the chief, told him to bring respondent in. After the departure of respondent with the police officers, the wife of respondent immediately called up appellant Turner at his home and inquired the reason for the arrest, but was given no information. Counsel for respondent also, that same night shortly after his detention in the police station, called up the commissioner at his home to know the reason for his detention, and was told that respondent was being held for investigation.

The trial court allowed appellants a wide scope in the introduction of evidence tending to show that the police department and Turner had probable cause or reasonable grounds to suspect respondent at the time was attempting to commit, or was committing, one of

the offenses of bootlegging or keeping a joint for the sale of intoxicating liquor.

The first contention of appellants is that the court erred in holding the surety company liable for the acts of the commissioner.

In the foregoing statement of the facts, which went to the jury, it appears that the commissioner himself directed the search to be made, directed that respondent be arrested and detained until further investigation, and knew, on the same night shortly after the raid had been made, that no liquor had been found at the premises of respondent and no evidence obtained on which to charge him with one of the offenses suspected. Such facts bring this case within the rule announced in *Pavish v. Meyers,* 129 Wash. 605, 225 Pac. 633. In that case we approved the pronouncement made in *Michel v. Smith,* 188 Cal. 199, 205 Pac. 113, stating:

"A different rule prevails in the case of the chief of a municipal police department. He may even be charged with the duty of selecting the members of the force, but he is not responsible for their acts, unless he has directed such acts to be done, or has personally co-operated in the offense, for each policeman is, like himself, a public servant."

See, also, 12 A. L. R. 980; 1 Dillon, Municipal Corporations (5th ed.), § 442.

Hence, under the above decision, not only is the surety company liable in such a case as this, but appellant Turner, as commissioner of safety and chief of police, is also liable for his direction of the acts to be done by the policemen, although he was not actually personally present.

The above reasons for the liability of the surety company and the personal responsibility of the commissioner also to a large extent affect the claim of error of appellants that the lower court erred in re-

fusing their requested instruction No. 3. That instruction was to the effect that the commissioner of public safety, having general supervision of the police department, is responsible for any acts of malfeasance committed in the discharge of their duties by the police officers, where such acts were done in pursuance of the order of such commissioner; but the commissioner is not responsible for wrongful acts committed by police officers while in the discharge of their duties unless he (the commissioner) directed such acts to be done, or personally cooperated in the offense, if any there was.

The trial court instructed the jury that if appellant Turner and those who acted under him in making the arrest, appellant Turner not being present at the time, had reason to believe, and honestly did believe, that respondent was either a jointist or a bootlegger within the definitions given the jury, which would be felonies, then respondent could lawfully be arrested and detained without a warrant directing the officers to make such an arrest.

Under the rule established in the *Pavish* case, *supra,* the commissioner of safety or chief of the police department could not escape responsibility by not being personally present when the search and arrest were made under his personal direction and without probable cause, right, or authority of law. The police officers would be guilty of insubordination had they not obeyed the commands given them by their superior, the chief police officer of the city. If what they say is true, they had his personal directions for what they did. What they did was, therefore, what he did.

The same reasons apply to the contention that the court erred in refusing appellants' requested instruction No. 8, which also was briefly covered by the instruction heretofore summarized which was given by the court.

Under the evidence in this case there was a case for the jury on the facts, and the trial court could not have properly granted appellants' motions for judgment notwithstanding the verdict or for a new trial upon any error of law. The trial court denied both motions.

A ground of the motion for a new trial was insufficiency of the evidence to justify the verdict. This required the trial court to weigh the evidence, and had he granted a new trial in this particular case, we would have been glad to sustain him.

The motion for a new trial was also based upon the ground that the recovery was so excessive and unusual as to indicate the existence of passion and prejudice on the part of the jury.

It is correct that in this kind of a case recovery should be only compensatory and never punitive. There is very little evidence on the part of respondent of any hardship imposed upon him by his detention. It is true he testified that the accommodations were very poor in the jail; that, as they locked him in the cell, they handed him a blanket and told him that was good enough for him to sleep on; that there was no mattress on the cot and no soap and no towel with which to wash; that the breakfast was very poor. He also testified that he had been sick two or three months previous to his arrest and detention, and that he had not gotten over the former illness at the time of the trial. He did not testify, however, to any ill effects arising specially from his detention in the city jail. He testified, however, that he was damaged in the sum of about $1,000. The jury did not think he was damaged more than $500 in addition to his attorney's fees and costs upon his release from custody. Nor do we think he was damaged that much, although we are very loath to invade the province of the jury to decide upon questions of damage. There is no evidence in this

case whatever to sustain any such verdict, and there was no damage alleged or claimed such as was alleged and claimed in *Wood v. Rolfe,* 128 Wash. 55, 221 Pac. 982, where plaintiff, a woman, although not actually incarcerated, was under criminal charges for two days, and was threatened with further prosecution. She testified to some mental suffering. We allowed an award of $500 general damages in her case to stand.

In this case our sense of justice revolts at an allowance of what it is apparent is "smart money" or punitive damages to penalize the honest but mistaken effort of the commissioner, although the jury found otherwise, to enforce the law. Had we tried the case ourselves, we feel that we would have allowed no more than mere nominal damages, in addition to the damages by way of actual expenses respondent was put to. As it is necessary in such cases as this to apply the general damage rule, but exclude punitive damages, we are convinced that respondent is not damaged, in addition to the $72.40 actual money expended to obtain his release from custody, in any sum exceeding $100. Appellant Turner probably was over zealous in his attempt to obtain evidence against respondent and to prosecute him. If he erred at all, he made an honest mistake. Respondent does not even claim that his reputation was harmed, or that his feelings were injured. He does not allege or claim any disgrace or humiliation.

Unless respondent will accept a remission of all damages in excess of $172.40, with his costs in the court below, appellants will be granted a new trial. Appellants, having recovered a more favorable judgment in this court, will be allowed costs of appeal.

TOLMAN, C. J., FULLERTON, MACKINTOSH, and MITCHELL, JJ., concur.