Leon JORDAN, Plaintiff,

v.

C. M. KELLY, Chief of Police, James D. Theisen, Officer, and Albert W. Thomson, Roy P. Swanson, Davis K. Jackson, Clinton W. Kanaga, Jr., H. Roe Bartle, ex officio, as Members of Board of Police Commissioners of Kansas City, Missouri, Defendants.

No. 14439–3.

United States District Court
W. D. Missouri, W. D.

Nov. 20, 1963.

Leonard S. Hughes, Jr., and Harold L. Holliday, Kansas City, Mo., for plaintiff.

W. H. Bates, Secretary-Attorney Board of Police Commissioners, Kansas City, Mo., for defendants.

James H. Ottman, of Shook Hardy, Ottman, Mitchell & Bacon, Kansas City,

Mo., special counsel for defendant Clinton W. Kanaga, Jr.

DUNCAN, District Judge.

Plaintiff instituted this suit in this court against the defendants to recover the sum of $50,000.00 actual and $50,000.00 punitive damages on Count I for alleged violation of § 1 of the 14th Amendment, and § 1983 Title 42 U.S.C.A. (the Civil Rights statute). Plaintiff alleges among other things:

"3. That defendants, Albert W. Thomson, Roy P. Swanson, Davis K. Jackson, Clinton W. Kanaga, Jr., and H. Roe Bartle, ex officio member, are members of the Board of Police Commissioners, duly appointed by the Governor of the State of Missouri, and that the defendant, C. M. Kelley was appointed by them as the Chief of Police of Kansas City, Missouri and is their agent; that the defendant, James D. Theisen, was and presently is a patrolman, employed by the Kansas City, Missouri Police Department, and at all times mentioned herein was acting in that capacity under the supervision, direction, and the control of the defendant Kelley and the defendant members of the Board of Police Commissioners of Kansas City, Missouri; that the defendants are all citizens and residents of the State of Missouri; that at all times hereinafter mentioned, they were acting under the authority and color of law.

"4. Plaintiff further states that on or about July 10, 1962, while the plaintiff was directing and supervising his affairs as an orderly and law abiding citizen and was conducting his business, he was, without warrant or other legal process, arrested by defendant, James D. Theisen, acting on his own and in the behalf of and under the direction of defendants, C. M. Kelley and the defendant members of the Board of Police Commissioners of Kansas City, Missouri, did wrongfully, maliciously and unlawfully commit an assault upon plaintiff by the use of vile and obscene language toward plaintiff, insulted, frightened, humiliated, and abused him, and in a most cruel and brutal manner did lay violent and forcible hands upon plaintiff and maliciously and unlawfully pushed, touched and jerked this plaintiff; that said acts of the defendants as aforesaid were under color of law but in violation of the privileges and immunities, the equal protection of the laws and the due process clauses of the Constitution of the United States, Amendment 14, and Chapter 21, Title 42, Section 1983, United States Code, and solely because of plaintiff's race and color.

"5. Plaintiff states that defendants had no reasonable grounds for believing that plaintiff had violated any ordinance of the municipality of Kansas City, Missouri or the laws of the State of Missouri, or of the United States and that defendants acted in accordance with a common plan and scheme to deprive plaintiff of rights guaranteed by the Constitution and laws of the United States, solely by reason of his race and color."

Count II seems to allege false imprisonment and seeks damages in the same amounts.

The defendants filed a Motion to Dismiss on the grounds:

"A.

"As a matter of law, plaintiff has no cause of action against defendant Chief C. M. Kelley, and defendants Albert W. Thomson, Roy P. Swanson, Davis K. Jackson, Clinton W. Kanaga, Jr., and H. Roe Bartle, members of the Board of Police Commissioners of Kansas City, Missouri.

"B.

"Plaintiff's complaint for damages fails to state a cause of action or complaint against any of the de-

fendants upon which relief can be granted.

"C.

"Plaintiff, having been properly charged, admitted to bail and released on bond, was afforded due process of law and is precluded from purusing the action and relief sought in plaintiff's complaint for damages."

Each defendant, except Theisen, filed an affidavit in support of said motion. The affidavits of the members of the Board of Police Commissioners are identical, and omitting the names, are as follows:

"Comes now ————, of legal age, having been first duly sworn, and on his oath states:

"(1) That he is one of the named defendants in a law suit entitled Leon Jordan v. C. M. Kelley, Chief of Police, et al., Number 14439–3.

"(2) That at all times pertinent in said law suit, to wit, on July 17, 1962, he was a duly appointed and qualified member of the Board of Police Commissioners of Kansas City, Missouri, having been previously appointed by The Honorable John M. Dalton, Governor of the State of Missouri, and administered the oath of office by a Judge of the Circuit Court of Jackson County, Missouri, at Kansas City.

"(3) Affiant states that he was not present at the time of the arrest of Leon Jordan, the plaintiff in the above captioned cause.

"(4) Affiant states that he has no personal knowledge, by his own observation, of any of the incidents leading up to or relating to the arrest of Leon Jordan, plaintiff in the above captioned cause.

"(5) Affiant states that he at no time directed or ordered the arrest of said Leon Jordan nor at any time did he confer with Officer James D. Theisen in relation to said arrest and prior thereto.

"Further affiant saith not."

The affidavit of the Chief of Police is identical in language to that of the members of the Board of Police Commissioners, except he states that he is the duly appointed and qualified Chief of Police of the Kansas City, Missouri, Police Department.

The Motion to Dismiss is also supported by the affidavit of Robert Gross, a sergeant of the Kansas City, Missouri, Police Department at the time of the alleged arrest on July 17, 1962. On the date of the arrest of the plaintiff, Sergeant Gross was assigned to duty at Police Station No. 3 in Kansas City, Missouri, as desk sergeant. His affidavit is as follows:

"AFFIDAVIT

STATE OF MISSOURI ⎱ ss
COUNTY OF JACKSON ⎰

Robert Gross, of lawful age, being first duly sworn, on oath states:

That he is a Sergeant on the Kansas City, Missouri, Police Department.

That on July 17, 1962, he was assigned to duty at No. 3 Police Station in Kansas City, Missouri, as a Desk Sergeant.

That on July 17, 1962, one Leon Jordan was arrested at 26th and Prospect at 10:50 p. m., on the charges of disorderly conduct and interfering with a police officer in the performance of his duties.

That the said Leon Jordan was booked in at No. 3 Police Station at 11:15 p. m., on July 17, 1962, on the charges of disorderly conduct in violation of Section 39.120, paragraph 3, Revised Ordinances of Kansas City, Missouri, and interfering with a police officer in the discharge of his official duties in violation of Section 39.530, Revised Ordinances of Kansas City, Missouri.

That the said Leon Jordan posted a cash bail bond from his own money in his possession in the sum of Fifty Dollars ($50.00) on these said

charges for appearance in the Municipal Court of Kansas City, Missouri, at 9:00 a. m., July 18, 1962.

That this bonding procedure and execution of this bail bond was completed at approximately 11:30 p. m., July 17, 1962, at the booking desk at No. 3 Police Station.

That the said Leon Jordan was never put in a cell at any time but remained at all times in the vicinity of the booking desk.

That after making the said bond, the said Leon Jordan remained at No. 3 Police Station and talked with some police officers for about fifteen minutes and then left the station.

/s/     Robert   Gross      ''

-----------------------------------------

Robert   Gross      ''

A copy of the record incident to the booking of the plaintiff at the station accompanies the affidavit and recites:

"Booked for loitering on the sidewalk at the place of arrest after the arresting officers told subject to move on from the scene. Subject also told other citizens at the scene that they did not have to move from the scene either. Subject had been warned before. Subject was also booked for inter*e*fering with the duties after he tried to warn other subjects that they did not have to leave the scene."

This was the charge upon which the plaintiff appeared in police court the morning following his arrest, and was acquitted.

The court is considering defendants' Motion to Dismiss under Rule 12(b) F.R.Civ.P. which provides:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, crossclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted * * * If, on a motion

asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, * * *."

Rule 56(c): "The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits."

Thereafter the court may render Summary Judgment. The court caused notice to be served upon all the parties in accordance with the requirements of the Rule, and set the matter for hearing on November 2, 1963, on which date, pursuant to notice, counsel for the respective parties appeared before the court, and the following discussion took place between one of the attorneys for the defendants and the attorneys for the plaintiff:

"MR. OTTMAN: I gathered from Mr. Holliday's suggestions which he has filed in the case that he agrees fundamentally with the facts as stated in the affidavits filed.

"MR. HOLLIDAY: Right, but it is my further position that even though they were not present or did not issue orders directly requesting the arrest of this particular plaintiff, that still does not make them exempt from liability.

"THE COURT: That is the purpose of getting it under this particular rule. Ordinarily those things are handled by affidavit and counter-affidavit.

"MR. HOLLIDAY: There is another problem: what the defendant did or did not do is a matter wholly within the defendants' knowledge. This case isn't at issue. We have not taken any interrogatories or any depositions, made any inspection of records, and we are unable to prove what the defendant did or what the

defendant did not do, and certainly before any judgment is given on the basis of a self-serving affidavit, we should have an opportunity to bring out the facts."

Pursuing the question further:

"MR. BATES: Pursuing that a moment, in the initial motion I filed, I filed an affidavit at that time to which was attached supporting data concerning the arrest, the times, the charges placed, the admittance or setting of bond, and admittance to bail. Now, do I take it from your statement, Mr. Holliday, you do not dispute those facts? Do you?

"MR. HOLLIDAY: That does not affect the case."

The court further inquired:

"Now, Mr. Holliday, you have not filed any counter-affidavits.

"MR. HOLLIDAY: That is right.

"THE COURT: As I understand, you are not disputing the facts that are alleged in the affidavit, but it is your contention under the law they are still liable.

"MR. HOLLIDAY: Yes.

"THE COURT: So it gets down to a question of law.

"MR. HOLLIDAY: For this reason, your Honor, if the Board or any members of it or the Police Chief issues orders which illegally required officers to arrest members of a class, and if this plaintiff was a member of that class, whether or not the officer went directly to the plaintiff, if the order went to a class of which this plaintiff is a member, then I say they are liable, and there is nothing in this affidavit to indicate whether this is true. Of course, we don't know. I mean we can't prove it. We have information but we can't prove it at this point."

Each of the parties has filed briefs in support of their respective positions.

Before discussing the question of liability, it is deemed desirable to review the statutes governing the Police Department in Kansas City, Missouri. This may be prefaced by stating that the Police Department of the City of Kansas City, Missouri, is not under the supervision or control of the City, but is under the control and supervision of a Board of Police Commissioners appointed by the Governor of the state.

Mo.Rev.Stat. § 84.350 (1959) V.A. M.S., provides for the creation of a Police Board comprised of four commissioners, and provides their qualifications and the salary to be received by them. The Mayor of Kansas City, Missouri, is also an ex officio member of the Board.

Section 84.360 determines how the Board shall be appointed, i. e., by the Governor of the State of Missouri, by and with the consent of the Senate.

Section 84.370 provides that the Commissioners shall take an oath before a judge of a court of record having jurisdiction of the trial of criminals in the county in which the respective cities in which they are appointed to serve shall be located.

Section 84.390 provides that any Commissioner may be removed by the Governor for official misconduct, and the proceedings for removal must conform to the requirements of the statute.

Section 84.420 enumerates and defines the duties and responsibilities of the Board of Police Commissioners, among which are:

"To Preserve the public peace;
* * *

     *     *     *     *     *

"See that all laws relating to elections and to the observance of Sunday, and relating to pawn brokers, intemperance, lotteries and lottery policies, vagrants, disorderly persons, and the public health are enforced;

     *     *     *     *     *

"They shall also be responsible for the enforcement of all laws and ordinances passed, or which may hereafter be passed, by the common council of such cities, not inconsis-

tent with the provisions of sections 84.350 to 84.860, or any other law of the state which may be properly enforceable by a police force.

\* \* \* \* \*

"(To) Appoint a chief of police who shall be responsible to the board for the proper execution of the policies, duties, and responsibilities established for the administration of the police department;
\* \* \* "

Section 84.480 provides that:

"The board of police commissioners shall appoint a chief of police who shall be the chief police administrative and law enforcement officer of such cities. He shall be chosen by the board solely on the basis of his executive and administrative qualifications and his demonstrated knowledge of police science and administration with special reference to his actual experience in law enforcement leadership and the provisions of section 84.420."

Section 84.500 provides that:

"The chief of police shall be the chief executive officer of the police department. He shall be responsible to the board of police commissioners for the proper administration of police affairs and suppression of crime in such cities and the execution of policy pertaining to police affairs as determined by the board of police commissioners, \* \* \* ".

This section also provides that he shall:

"Have the power to appoint, subject to approval of the board, and shall have the power to promote, discipline and suspend all police officers and policemen." [His actions in these respects are subject to review by the board].

Section 84.570 determines the qualifications of the policemen and officers of the police force, and it also provides that, from time to time, competitive examinations or tests for determining the quali-

fications and fitness for appointment to the police force, shall be provided for, and that a list of those qualifying for such examination shall be established listing those qualified in order of rank. When an appointment is to be made, *the appointment shall be made from such eligible list.*

Section 84.650 provides that:

"The commissioners of police shall cause all persons arrested by the police to be brought before some magistrate or municipal judge within said cities, to be dealt with according to law."

A review of the statutes clearly reveals that the names of police officers appointed by the Chief of Police are taken from a register which has been prepared pursuant to an examination to determine their qualifications, and that they may be removed only by preferring charges. Any action by the Chief of Police with respect thereto is subject to review by the Board of Police Commissioners.

The statutes clearly provide that the members of the police force are both state and city officers, whose duty it is to enforce the laws of the state and the ordinances of the city, and in the performance of their duties in that respect, they are clearly acting under color of law.

Defendants' brief cites § 39.120 of the Ordinances of the City of Kansas City, Missouri, entitled, "Disorderly Conduct."

"Any person, who, with intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct: \* \* \*.

"(3) Congregates with others on a public street and refuses to move on when ordered by the police."

Also:

"30.530. *Obstructing and resisting officer or inspector*—Any person who shall in any way or manner hinder, obstruct, molest, resist or otherwise interfere with any city

officer or inspector or any member of the police force in the discharge of his official duties shall be guilty of a misdemeanor.

"Any person who shall attempt to prevent any member of the police force from arresting any person, or shall attempt to rescue any person in the custody of a member of the police force, or from anyone called to assist the police officer, shall be guilty of a misdemeanor."

[This Ordinance is not cited or referred to by the court for the purpose of determining whether or not the police officer, Theisen, was justified in arresting the plaintiff, or whether or not the plaintiff was guilty of any of the acts mentioned in the Ordinance, or whether or not the arresting officer committed any of the acts of violence alleged in plaintiff's complaint.]

In both counts of the Complaint plaintiff apparently attempts to create the inference at least, that the plaintiff was arrested simply because of his color. I am unable to see what difference it makes what his color may be insofar as his right of action is concerned for the violation of his civil rights, or what difference it makes as to the liability of the defendants in the enforcement of the Ordinances of the City.

■ The law is designed as a protective shield for citizens of any color, and the violation of the civil rights of any citizen, regardless of color, affords a cause of action to that person under the statute. The complaint does not allege a conspiracy, nor is it a class action. The action is not brought for and on behalf of others, but solely for plaintiff's benefit.

All the court has before it, as far as this motion is concerned, is the affidavit of the desk sergeant indicating the charges made against the plaintiff at the time he was brought into the station by the arresting officer; whether they are true or false is not for the court to consider in a determination of the Motion to Dismiss as to defendant Theisen.

The statement of the sergeant contained in his affidavit as to the reasons for plaintiff's arrest are hearsay based upon the report of the arresting officer, Theisen.

■ A factual controversy exists as to Theisen under the allegations of the Complaint, which may not be determined on a Motion to Dismiss or Motion for Summary Judgment.

■ Under the authority of Monroe et al. v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.E.2d 492 (Oct. 1960), a cause of action is alleged against Theisen and the Motion to Dismiss as to him is overruled.

We come next to the question of the liability of the defendant Chief of Police. The decisions are not in harmony as to the exact scope of the liability of sheriffs, constables, marshals or other peace officers for acts of their deputies. There is a difference of judicial opinion in the various states. This is the result, to some extent, of statutory provisions and also the question as to whether or not the deputies are acting by virtue of their office and acts done under color of office. 47 Am.Jur. 158; Foley v. Martin, 142 Cal. 256, 71 P. 165; 75 P. 842, 100 Am. St.Rep. 123, State ex rel. to Use of Russell et ux. v. Moore et al., 19 Mo. 369; State of Mo. ex rel. and to Use of DeVault v. Fidelity & Casualty Co. of N. Y., 8 Cir., 107 F.2d 343.

■ The rule is different however, with respect to the Chief of Police of a municipal police department. Even though he may be charged with the duty of selecting the members of the force, he is not responsible for their acts unless he has directed such acts to be done, or has personally cooperated in the offense, for each police officer, is, like himself, a public servant. Casey v. Scott, 82 Ark. 362, 101 S.W. 1152, 118 Am.St. Rep. 80, 12 Ann.Cas. 184; Baisley v. Henry, 55 Cal.App. 760, 204 P. 399; Michel v. Smith, 188 Cal. 199, 205 P. 113, 12 A.L.R. 980; 34 A.L.R. 561; Pritchard v. Downie, 216 F.Supp. 621 (E.D.Ark, 1963).

The most recent case, Pritchard v. Downie, supra, was a civil rights action against a chief of police of the City of Little Rock, Arkansas, and grew out of the racial disturbances there. Although the case did not come up on a Motion for Summary Judgment or to Dismiss, after trial the court held that the chief of police was not liable, although he was present at the time the alleged wrongful acts were committed.

In Michel v. Smith, supra, the question involved was very similar to the one with which we are dealing here. In that case the chief of police was sued for the alleged wrongful arrest by members of the police force of the City of Los Angeles. The court stated (205 P. 114–115):

"Charter of the City of Los Angeles * * * establishes a department of the government of the city, to be known as the police department, which shall be under the management and control of three commissioners to be known as the board of police commissioners. * * the charter provides that the department shall consist of the chief of police, who shall be appointed by and be subject to removal by the mayor, and as many subordinate officers, and such policemen, detectives and employees as the city council shall by ordinance determine. All appointments in the department shall be made by the chief of police, subject to approval by the board of police commissioners, and subject to such civil service regulation as may be in force at the time the appointments are made."

In determining that the chief of police was not liable for an arrest made by one of the officers, the court states (205 P. 115):

"In this capacity he may not be held liable in damages for the unlawful acts and omissions of the subordinates of the department, selected pursuant to the provisions of the charter, unless it can be shown that he has directed such acts or personally co-operated therein."

Another case in which the liability of the chief of police for the acts of the deputy or police officer was discussed, is Pavish v. Meyers, 129 Wash. 605, 225 P. 633, 34 A.L.R. 561. There the court stated:

"But the courts have very generally drawn a distinction between a sheriff and a chief of police, holding that the deputies of the former are selected by the sheriff and act purely as his representatives, but that police officers are generally not selected exclusively by the chief of police, and are themselves officers and do not act for the chief of police in the performance of their official duties."

Casey v. Scott, supra, 101 S.W. 1152 (Ark.) also involved the question of liability of a chief of police for his police officers. There the court stated:

"A sheriff is responsible for his deputies, for they are acting in his private service in his name and stead, and are only public officers through him. A chief of police may select a police force, but he is not responsible for their acts, as each policeman is a public servant himself. So under this ordinance, the dog catcher was a public servant selected by the chief of police just as a patrolman would be selected by him, or a mayor or other appointing power. There is no liability in such cases, unless the appointing officer fails to exercise reasonable care in the selection of the appointee—a question not presented here."

Very clearly the general rule with respect to the liability of a chief of police applies to this case. The statutes clearly require that the officers of the police force of Kansas City be selected by the chief of police from a list of those who have qualified pursuant to an examination, and the chief of police is required under the law to make all selections from that list, and such officers are in no sense

the personal appointees of the chief of police.

The police officers are public officials just as the chief of police is a public official, and their duties are prescribed by the authority under which their positions are created.

The only allegation in the complaint is that in making the arrest, he, the arresting officer, "was acting in that capacity under the supervision, direction, and the control of the defendant Kelley and the defendant members of the Board of Police Commissioners."

The only authority cited by the plaintiff is that of Monroe et al. v. Pape, supra. Very clearly the holding in that case may not be accepted as authority for holding the chief of police liable under the general rule as it has been discussed herein.

The chief of police would not be responsible for the wrongful acts of the officer unless he was present or unless it is shown he directed such acts or personally cooperated in them, and there is no dispute but that he was not present, did not direct and did not cooperate in the making of the arrest.

The allegation that the arresting officer was acting under the general supervision, direction and control of the chief of police is not sufficient to render him liable under the statutes and the cases cited. The reasoning and principle of law discussed with reference to the liability of the chief of police applies to the members of the Board of Police Commissioners also.

Under the allegations of the complaint and the undisputed facts as revealed by the affidavits and the statement of counsel, the members of the Board of Police Commissioners cannot be held liable for the wrongful acts committed by the police officer as alleged in plaintiff's complaint. Monroe et al. v. Pape, supra.

The Motion as to the defendant Chief of Police and members of the Board of Police Commissioners, for the reasons aforesaid, is sustained, and summary judgment is rendered against plaintiff as to those defendants.