LANE, Respondent, v. COLLINS, Appellant.

*November 1—November 30, 1965.*

For the appellant there was a brief by *Arno J. Miller* and *Rogers & Owens,* all of Portage, and oral argument by *Mr. Phillip Owens* and *Mr. Miller.*

For the respondent there was a brief and oral argument by *Jack McManus* of Madison.

CURRIE, C. J. The following issues are presented on this appeal:

(1) Was the arrest of plaintiff by defendant lawful as a matter of law?

(2) Was it prejudicial error for the trial court to admit into evidence testimony bearing on defendant's motive in making the arrest?

(3) Did the trial court commit prejudicial error in instructing the jury?

(4) Were the damages awarded excessive?

*Lawfulness of Arrest.*

The tort of false imprisonment has been defined on a number of occasions by this court as, "The unlawful restraint by one person of the physical liberty of another." [1] If the arrest of plaintiff by defendant was lawful it would necessarily follow that the ensuing holding of plaintiff in custody for an hour and a half until he could provide bail was not an unlawful restraint.

Defendant contends that the arrest was lawful as a matter of law, and, therefore, his motion for directed verdict should not have been denied. The trial court took the position that under the special facts of this case the lawfulness of the arrest presented an issue of fact for the

---

[1] *Weiler v. Herzfeld-Phillipson Co.* (1926), 189 Wis. 554, 557, 208 N. W. 599; *Hadler v. Rhyner* (1944), 244 Wis. 448, 452, 12 N. W. (2d) 693; *Weber v. Young* (1947), 250 Wis. 307, 311, 26 N. W. (2d) 543; also see Prosser, Law of Torts (3d ed.), p. 54, sec. 12; 22 Am. Jur., False Imprisonment, p. 353, sec. 2.

jury to determine. In order to pass on this issue we will set forth a brief résumé of those facts. In doing so it is necessary to state only those facts which tend to support plaintiff's version of what occurred inasmuch as plaintiff recovered the verdict.[2]

Plaintiff was a resident of Ripon but his divorced wife and children resided in Portage. On the evening of the arrest defendant was on duty as a city policeman patrolling the streets in a police car. He thought he saw plaintiff's car make a U-turn and followed it until plaintiff stopped opposite the Raulf Hotel. When defendant pulled up alongside plaintiff's car he noticed that it had a broken taillight. Upon calling plaintiff over to the police car defendant did not mention the U-turn or the taillight, but instead asked plaintiff not to call his home again. Then some discussion took place between the two over the fact that plaintiff had called defendant's home to request that defendant not associate with plaintiff's divorced wife. The reason plaintiff had made the request was because he had learned from his children who reside with his ex-wife that defendant had been calling upon her. Other evidence was adduced that defendant had been seen in her company. In the conversation between plaintiff and defendant preceding and coincident with the arrest defendant did not mention either the making of the U-turn by plaintiff or the operating of the vehicle with a defective taillight.

While the two were talking, plaintiff's former wife drove up in another car and stopped on the opposite side of the street. Plaintiff crossed the street and talked to her. Upon returning to defendant the latter said, "You're on probation, aren't you?" This had reference to the fact that plaintiff had been convicted of the offense of nonsupport of his former wife, and had been granted probation. This provoked plaintiff who then stated he thought

---

[2] *Zartner v. Scopp* (1965), 28 Wis. (2d) 205, 209, 137 N. W. (2d) 107; *Jensen v. Heritage Mut. Ins. Co.* (1964), 23 Wis. (2d) 344, 348, 127 N. W. (2d) 228.

defendant was a "son-of-a-bitch." Defendant asked plaintiff to repeat the statement, and plaintiff did, thus calling defendant "son-of-a-bitch" a second time. Defendant then told plaintiff he was arresting him because of making this statement.

Plaintiff walked over to the hotel in order to call a friend to arrange for his bail. Defendant called another officer and the officers walked into the hotel and arrested plaintiff and took him to the police station.

Sec. 954.03 (1), Stats., authorizes a police officer to arrest without a warrant "whenever the officer has reasonable grounds to believe that the person to be arrested has committed a misdemeanor, or has violated an ordinance, and will not be apprehended unless immediately arrested. . . ."

The disorderly conduct ordinance upon which the arrest was grounded is sec. 16.11 of the Portage code of ordinances entitled, "Disturbance of the Peace. Disorderly Conduct," and provides as follows:

"16.11 DISTURBANCE OF THE PEACE. DISORDERLY CONDUCT. No person shall, within the limits of the City of Portage, Commit any of the following offenses, namely:
" . . .
" (d) OBJECTIONABLE LANGUAGE. Use any profane, vile, filthy, or obscene language in any public place within the hearing of other persons in such public place;
" (e) ASSAULT. Assault another, when not excusable or justifiable, or use in reference to and in the presence of another, or in reference to and in the presence of another member of his family, abusive or obscene language, intended or naturally tending to provoke an assault or any breach of the peace; . . ."

These provisions are similar in import to that portion of sec. 947.01 (1), Stats., entitled, "Disorderly Conduct," which makes it a misdemeanor for a person to engage "in . . . abusive, indecent, profane . . . conduct . . ." in a public or private place. The underlying reason for disorderly conduct statutes and ordinances proscribing abusive language is that such language tends to provoke

retaliatory conduct on the part of the person to whom it is addressed that amounts to breach of the peace.[3] Calling another person a "son-of-a-bitch" under charged circumstances might well constitute abusive language which is likely to have that result. The fact that the abusive language is directed to a policeman or other law-enforcement officer and is not overheard by others does not prevent it from being a violation of such statute or ordinance.[4]

However, a police officer cannot provoke a person into a breach of the peace, such as directing abusive language to the police officer, and then arrest him without a warrant.[5]

In *Pavish v. Meyers* [6] the Washington court was faced with a false-imprisonment action arising out of defendant officer's arrest of plaintiff merchant for breach of the peace. Defendant, while on duty, made derogatory remarks about plaintiff's fish market. Plaintiff then replied that defendant officer was a "whiskey peddler" and defendant arrested him for breaching the peace. Plaintiff sued for false imprisonment, but the trial court nonsuited him and would not allow certain evidence to be introduced concerning defendant's actions prior to plaintiff's "whiskey peddler" remark. The supreme court reversed and ordered a new trial on the basis that the conduct of defendant officer was crucial to the false-

---

[3] Peters v. State (1886), 66 Wis. 339, 342, 28 N. W. 136.

[4] *St. Petersburg v. Calbeck* (Fla. App. 1960), 121 So. (2d) 814; *Jones v. Commonwealth* (1948), 307 Ky. 286, 210 S. W. (2d) 956; *St. Paul v. Morris* (1960), 258 Minn. 467, 104 N. W. (2d) 902; *State v. Chaplinsky* (1941), 91 N. H. 310, 18 Atl. (2d) 754; Anno. Opprobrious words addressed to policeman as breach of peace, 34 A. L. R. 566.

[5] *Jacksonville v. Headen* (1892), 48 Ill. App 60; *Oratowski v. Civil Service Comm.* (1954), 3 Ill. App. (2d) 551, 123 N. E. (2d) 146; *Scott v. Feilschmidt* (1921), 191 Iowa 347, 182 N. W. 382; *Columbus v. Guidotti* (1958), 81 *Ohio L. Abs.* 33, 160 N. E. (2d) 355; *Pavish v. Meyers* (1924), 129 Wash. 605, 225 Pac. 633, 34 A. L. R. 561.

[6] *Supra,* footnote 5.

imprisonment question. The court conceded that plaintiff's epithet standing alone clearly constituted a breach of the peace, but nevertheless plaintiff's testimony that defendant provoked the cause for arrest made the question of the lawfulness of the arrest a jury issue. In reaching this result the court said:

*"We are not saying that officer Meyers was guilty of provoking the cause for the arrest, but merely that there was testimony tending to show that fact, and the trial court should have submitted this phase of the case to the jury.* We have said that, between himself and the public, the appellant was guilty of such conduct as tended to breach the peace and probably justified his arrest, but in this action between himself and the officer arresting him, he had a right to show, if he could that his conduct was brought about by the offensive conduct of the officer himself. It follows that the trial court was in error in not permitting the facts to be shown for the purpose of showing that the conduct of the officer provoked that of appellant. The latter was entitled to show, as he offered but was denied the privilege, that officer Meyers harbored ill feeling towards him. Plainly, testimony of this character would tend to enlighten the jury on the question of whether the officer's conduct tended to provoke that of the appellant. If, under the testimony, the jury should believe that respondent Meyers so acted as to be the cause of appellant's conduct and to justify it, then, so far as this action is concerned, the arrest would be wrongful and unjustified." (Emphasis supplied.) [7]

Accepting plaintiff's version of what transpired between him and defendant immediately preceding and coincident with the arrest, a fact situation is presented similar to that in the *Pavish Case*. We conclude that a jury issue was presented with respect to whether the conduct of the officer was such as to have deliberately provoked plaintiff into use of the abusive language to defendant and thus render plaintiff's arrest by defendant unlawful. Therefore, the trial court properly denied defendant's motion for a directed verdict.

[7] Id. pages 610, 611.

*Admission of Evidence as to Defendant's Motive.*

Defendant complains that plaintiff tried the instant case on the theory that the cause of action was one of malicious prosecution, not false imprisonment, and was permitted to introduce evidence that his arrest by defendant was motivated by malice. If an arrest is otherwise legal it is not invalidated by the fact that the arresting officer was motivated by malice.[8] However, where, as here, punitive damages are demanded, evidence of malice is admissible for the limited purpose of proving such punitive damages.[9] Furthermore, where the arrest is for disorderly conduct growing out of abusive or obscene language directed to the arresting officer and the issue of provocation by the officer is presented, evidence of ill feeling or malice on the part of the officer might be material on the issue of provocation.[10]

*Instructions to Jury.*

Defendant contends that the trial court committed prejudicial error in instructing the jury in several respects. One portion of the instructions of which defendant complains is the following:

"If you find that the defendant instituted the criminal proceedings in question here, not for the purpose of furthering the ends of justice, nor for the purpose of aiding the City in punishing the plaintiff for an alleged violation of the criminal laws of the City, but rather for the purpose of furthering his own ends or purposes, or for a vindictive or ulterior purpose, or chiefly from motives of ill will, then, and in such event, you would be justified in finding that such prosecution so instituted by defendant was actuated by malice on his part towards the plaintiff."

[8] *Murphy v. Martin* (1883), 58 Wis. 276, 16 N. W. 603; Annos. 19 A. L. R. 671 and 137 A. L. R. 504.

[9] *Hadler v. Rhyner* (1944), 244 Wis. 448, 452, 12 N. W. (2d) 693; *Bergeron v. Peyton* (1900), 106 Wis. 377, 381, 82 N. W. 291; Prosser, Law of Torts (3d ed.), p. 56, sec. 12.

[10] *Pavish v. Meyers, supra,* footnote 5, page 611.

This quoted paragraph is taken out of context, and when read in context it related solely to punitive damages, not lawfulness of arrest. The trial court commenced the instruction on punitive damages by stating that, if the jury found plaintiff had been wrongfully imprisoned against his will and further found that defendant was actuated by malice in making the arrest, then the jury might award punitive damages. The instructions then proceeded to state, "Malice, as used in this connection [the award of punitive damages], may consist of any motive other than a desire to bring a guilty party to justice." Two further sentences followed and then came the afore-quoted paragraph. We find no error in this instruction.

Defendant complains because the trial court failed to read sub. (a) of sec. 16.11, Portage ordinances, to the jury. However, defendant did not specifically request that this subsection of the ordinance be quoted in the instruction, but requested that the entire ordinance be read. In the instructions the court did quote subs. (d) and (e) of this ordinance relating to the use of objectionable language. Sub. (a) is entitled, "Fights" and reads, "Engage in or attempt to provoke any fight, brawl, or noisy altercation on any street, alley or other public ground; . . ." The ordinance contains eleven subsections lettered (a) through (k) and the refused instruction requested the court to read the entire ordinance. The trial court apparently thought it unnecessary to read the entire ordinance to the jury, but read what it considered to be the two appropriate subsections. Under the instant facts we fail to see that sub. (a) adds anything to the elements of offense stated in sub. (e). Moreover, we do not consider that the requested instruction was sufficient to now predicate the instant assignment of error because it did not apprise the trial court that the reading of sub. (a) of the ordinance was deemed any more essential to defendant's theory of the offense charged than the eight

other subsections upon which defendant does not now rely.

Defendant requested the giving of the following general instruction on burden of proof: "The burden is on the plaintiff to prove the affirmative of his contentions by credible evidence to a reasonable certainty." The trial court gave a proper burden of proof instruction with respect to the issue of unlawful restraint, detention, and imprisonment, but failed to give any instruction placing the burden of proof with respect to the issue of damages on plaintiff. While it was error not to have given such an instruction we are satisfied that it was not prejudicial because we do not consider it probable that the jury's assessment of damages would have been any different if such an instruction had been given.

The trial court also refused this requested instruction:

"You are instructed that in connection with subsections (d) and (e) of the City Ordinance just read to you, the use of abusive or obscene language as therein referred to, is an offense whether used in the presence of one, or more than one, person."

If this requested instruction had been confined to sub. (e) of the ordinance it would have been error not to have given it. However, sub. (d) contains the requirement that the objectionable language be "within the hearing of *other persons*" (italics supplied). Because the requested instruction embraced sub. (d) as well as sub. (e) of the ordinance it was not error to refuse to give it.

The last contention advanced by defendant with respect to the instructions was that the trial court erroneously refused to give a requested instruction as to plaintiff's reputation on the damage issue. While the complaint alleged damage to reputation, plaintiff abandoned this item of claimed damage by putting in no evidence relating to damage to reputation. Thus, damage to reputation was not an issue under the evidence, and the

trial court properly refused to give this requested instruction.

## Damages.

Defendant contends that both the $750 awarded for compensatory damages and the like amount awarded for punitive damages are excessive.

As to compensatory damages, plaintiff verified that he had paid an attorney $100 to represent him in court on the disorderly conduct charge. Plaintiff's main other claim in regard to compensatory damages was the mental distress caused by the arrest. This distress is explained by the following testimony of plaintiff:

"*Q.* You have to describe to the Court and Jury how it upset you, when it upset you, and for what period of time? *A.* By taking me out of a public place, you might say, physically, it upset me tremendously; being conducted across the street between two police officers, especially when I didn't—there was nothing that I knew I had done wrong. And even my daughter had seen it from up the street.

"*Q.* When you came out of the hotel in the custody of these two officers, you observed your daughter? *A.* No, sir. My ex-wife was parked on the north side of Cook Street and my Daughter told me she had seen me taken out."

Plaintiff further testified that he was upset because a number of people had heard about the arrest and mentioned it to him.

The damages alluded to by plaintiff, namely, attorney's expenses and mental distress, are compensable damages in a false-imprisonment action.[11]

The trial court made this comment on the damage award in passing on motions after verdict, "I personally

---

[11] Wis J I—Civil, Part II, 2110; *Sorenson v. Dundas* (1880), 50 Wis. 335, 338, 7 N. W. 259; Prosser, Law of Torts (3d ed.), p. 56, sec. 12.

felt that their [the jury's] adjudication of damages, both as to compensatory and . . . punitive . . . were conservative, and the Court would not be inclined to change those in any event."

We find no merit in defendant's contention that the damages, either compensatory or punitive, were excessive.

*By the Court.*—Judgment affirmed.