**Hector SANTIAGO–RODRIGUEZ et al., Plaintiffs,**

v.

**Luis TORRES–MASSA, Superintendent of Police Force, etc., Defendants.**

**Civ. No. 335–72.**

United States District Court, D. Puerto Rico.

May 16, 1972.

## MEMORANDUM OPINION

CANCIO, Chief Judge.

This is an action brought under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, and 28 U.S.C. § 1343, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, by a group of persons, against the Governor of Puerto Rico, the Superintendent of Police, several officers and policemen, the Administrator of the Land Authority of Puerto Rico, and an employee of the Land Authority.

Due to many and various reasons which we need not elaborate but which include overpopulation, unfulfilled expectations, and the need of many to have a home of their own, together with the unavailability of housing at a cost which the poor of Puerto Rico can afford, Puerto Rico has experienced during the past year or so a series of incidents which have become known as land invasions. These are characterized mainly by a group of homeless persons accompanied in some occasions by a sprinkling of speculators,[1] who will occupy a parcel of rural land and build their homes on the land or just pretend to take possession of it.

The plaintiffs in this case are squatters in the sense that we have described them above, who claim that the police violated their federally-protected constitutional rights by committing the following called "offenses" in the complaint:

"16. Defendants have encouraged and permitted officers of the police force and their agents to use excessive force, to unlawfully destroy personal property and to act in a discriminatory fashion against members of the included class.

17. Defendants failed to take adequate disciplinary steps, including dismissal against officers when their illegal and unconstitutional activities either actually came to their attention or should have come to their attention.

Salvador Tio, P. R. Legal Services, Inc., Rio Piedras, P. R., for plaintiffs.

Peter Ortiz, Sol. Gen., Robert Armstrong, Jr., Augusto A. Cirino, Asst. Sols. Gen., San Juan, P. R., for the Government of Puerto Rico.

---

1. See this Court's findings, specifically No. 11, in Caballero v. Ferré, Memorandum Opinion, entered September 22, 1971.

18. Defendants members of the police force have unlawfully used excessive force to destroy plaintiffs' personal property not allowing plaintiffs to enter the homes they reside although charges against plaintiffs have been filed for occupying land allegedly belonging to the Land Authority.

19. Defendants members of the police force have used weapons to intimidate plaintiffs and have threatened to inflict physical harm on them if plaintiffs try to enter into their homes.

20. Defendants have violently and illegally deprived members of the included class of their possession of land where they had built their homes in the aforementioned community.

21. Defendants have illegally searched the homes of plaintiffs illegally seizing the working tools and implements that plaintiffs use as a means of subsistence.

22. Defendants violated the right of privacy of the members of the included class when they forcibly invaded their homes without a warrant.

23. Defendants have unlawfully violated the right of members of the included class to be secured in their homes when they raided their homes and with the use of violence and/or threats forced them out of their homes.

24. Defendants have unlawfully violated plaintiffs' right of privacy and their right to be secured in their homes.

25. Defendants have intentionally deprived members of the included class of the rights expressly stated in paragraphs 16–25. They have done so without judicial order."

On considering these allegations, which carefully include, among other matters, what this Court found to be violations of federally-protected rights in

the Caballero v. Ferré case, *supra*, together with accompanying affidavits, and after meeting with the attorneys for both sides, this Court issued a Temporary Restraining Order enjoining the defendants, except the Governor of Puerto Rico,[2] from using illegal and abusive police practices against plaintiffs, including the use of excessive force; destructing personal property; invading and ransacking homes without a warrant; and violating plaintiffs' right of privacy; and otherwise acting in a discriminatory or illegal fashion against them.

By stipulation, the hearing for the preliminary and permanent injunctions was consolidated with the hearing on the merits.

The Court denied a motion for dismissal filed by the defendants on April 25, 1972, and the evidentiary hearing began. At the end of the plaintiffs' evidence, the defendants filed an oral motion to dismiss under Rule 41(b)—Federal Rules of Civil Procedure—which motion was argued by both sides. The motion was granted by the Court from the bench on May 1, 1972.

In the memorandum opinion, the Court includes its findings and conclusions for granting the dismissal.

The evidence presented by plaintiffs consisted of the oral testimony of defendant Masini, Director of the Land Authority; defendant Torres Massa, Superintendent of Police, and plaintiffs Héctor Santiago Rodríguez, Felícita García Aguayo, Victor Couvertier; Mayor Ricardo Gutiérrez and Lt. Víctor Vélez Lebrón, both of the Police.[3]

The facts which gave rise to the complaint occurred on April 12, 1972, when the police went to arrest several of the residents of the squatter community which has been christened Villa Retorno, for violating the law of the Commonwealth of Puerto Rico relating to the invasion of land.[4] The named plaintiffs

2. The Governor was not included upon a finding of very little likelihood of success against this defendant.

3. No evidence of title was presented because the parties stipulated that the Puer-

to Rico Land Authority was the owner of the land "invaded".

4. Law No. 6 approved March 10, 1972 amending Arts. 371 and 519 of the Penal Code of Puerto Rico.

had been occupying the land, living in shacks built by them on the land, since March 24, 1972.

The only testimony which relates to the action taken by the Police and which was presented to prove that the facts, alleged in the complaint and reproduced above, were committed, was the following:

Plaintiff Santiago Rodríquez alleges police brutality because a policeman grabbed him by the arm when he arrested him at 5:45 a. m. on April 21, 1972. His wife testified that she was seen almost naked when her husband let the police into their house. They also attempted to show that the police put salt in their drinking water but they could not connect the police with the salt. Another plaintiff Mr. Couvertier, testified that when the police knocked on the door of his shack on that same date, policeman Cardona, who is not a defendant herein, kicked the door down and it fell on top of him.

The testimony of the defendants as hostile witnesses for the plaintiffs elaborated the procedure followed by the police in the cases of land invasions, which they testified was followed in this case. Essentially, upon the complaint of the owner of the land or some other person, in this case defendant Eduardo Martínez, an employee of the Land Authority, the police goes to the place and tries to obtain the names of the squatters. On this occasion they were unsuccessful. Then the data goes up the police hierarchy to the Chief of Operations who transmits the information to the Secretary of Justice who, in turn, decides whether to obtain warrants of arrest.

Here they were obtained in the name of John Doe, etc.[5] The plaintiffs were arrested and brought before a justice of the peace who found probable cause against those arrested.

■ It is apparent at first glance that there is no evidence to directly connect acts of defendants Ferré, Torres Massa, Masini, and Martinez with the police action which took place on April 12, 1972. There was evidence as to the hierarchy in the Police Department and the supervisory duties of the Superintendent, but that evidence would be directed to the application of the doctrine of respondeat superior to the police force in civil rights cases. That doctrine has expressly been rejected, in its application to the police, in the Caballero v. Ferré case, *supra*. It may be different when the subordinate is acting in the name of the superior, like the deputy acts for the sheriff in the sheriff's office in some localities,[6] and when the assistant or deputy director of an agency acts in the name of the director, as authorized by the director.[7] In this case the policemen were acting in their own capacity and were not representing or acting for a particular person. Finally, there is no proof whatsoever of a conspiracy of any sorts in which these defendants may have been shown to participate, so as to bring their action under the purview of 42 U.S.C. § 1985.

■ As to the remaining defendants, the evidence is insufficient to even make a prima facie case against them for violating the civil rights of plaintiffs so as to justify injunctive relief or damages.

Contrary to what happened in Villa Margarita,[8] their houses were not de-

---

5. The sufficiency of these warrants has not been raised in this action, so we do not discuss the matter further.

6. For a discussion of this problem see Jordan v. Kelly, D.C., 223 F.Supp. 731 and Anderson v. Nosser, 5th Cir., 438 F.2d 183 at 199.

7. See this Court's opinion in Alto Construction Corporation v. Hector L. Schmidt, Civil 59–72, entered on March 29, 1972.

8. The name of the community in the Caballero v. Ferré case. It is well to note that now, after the decision of the Supreme Court in Linch v. Household Finance, decided March 23, 1972, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, in a Villa Margarita situation, the Court could also enter to protect the property rights of the squatters, insofar as their personal property may have been destroyed.

stroyed and they were not abused. In the one incident where Couvertier testified that his door was kicked down, the person responsible was not sued. When Felícita García's privacy was invaded, and she was seen almost naked, it was her husband who let the defendants in. As to her husband being pulled by the arm, this is not an unusual occurrence when arrests are being made, and is not sufficient in this case to justify the relief sought.

For the aforementioned reasons, this case stands dismissed under Rule 41(b) of the Federal Rules of Civil Procedure.

Because of the manner in which this case is now disposed of, there is no need to further expand on the reasons for this Court's denial of defendant's first motion for dismissal.

It is so ordered.