Howard REED, Sr., Romaldga Reed and Howard Reed, Jr., Plaintiffs,

v.

Sergeant Edward SCHNEIDER and Sergeant Joseph De Fina, Individually and as Police Officers in the Police Department of the City of New York and the City of New York, Defendants.

No. 79 CV 5286.

United States District Court, E.D. New York.

June 25, 1985.

Hartman & Lerner, New York City, for plaintiffs; Eugene Axelrod, New York City, of counsel.

Frederick A.O. Schwarz, Corp. Counsel of City of New York, New York City, for defendants; James F.X. Hiler, of counsel.

## ORDER

McLAUGHLIN, District Judge.

■ The attached Report and Recommendation of Hon. Shira A. Scheindlin, United States Magistrate, is hereby adopted as the Opinion of this Court. No objections were filed within the time permitted.

It is hereby ORDERED that the complaint is dismissed as against defendant City of New York. Discovery in this case is to proceed forthwith before Magistrate Scheindlin.

SO ORDERED.

## REPORT AND RECOMMENDATION

March 12, 1985

SHIRA A. SCHEINDLIN, United States Magistrate.

Plaintiffs, Police Officer Howard Reed, Sr., his wife Romaldga Reed, and their son, Howard Reed, Jr. bring this action seeking damages for the alleged violation of their constitutional right to be free from unreasonable searches under 42 U.S.C. § 1983, the Civil Rights Act ("the Act"). This case was referred to me by the Honorable Joseph M. McLaughlin for a report and recommendation on defendants' motion for summary judgment.

### I. Statement of Facts [1]

On the evening of September 18, 1978, Police Officer Brady, accompanied by defendants, Sergeants Schneider and DeFina, arrived at the home of plaintiff, Police Officer Howard Reed, Sr. Defendants, members of the Internal Affairs Department, were in possession of a Grand Jury subpoena that they planned to serve on Officer Reed that night. (DeFina, 13; Schneider, 13).[2]

Defendants went to plaintiffs' house to serve the subpoena and, when they discovered that Officer Reed's car was not parked near the house, they agreed to wait outside the house for him to arrive. Shortly after midnight, as the last light in Officer Reed's home was extinguished, defendants sought to gain entry into Officer Reed's home (DeFina, 29–30; Schneider 33). They knocked on the front door, and after several minutes passed without response, they decided that one officer would

---

1. The following facts are taken from plaintiffs' complaint and depositions. As such, they are allegations accepted as true only for purposes of this motion, and do not constitute findings of fact. See *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

2. Citations to individuals' names refer to that person's deposition together with the appropriate page number of the deposition transcript.

attempt to telephone the residence to inform its occupants that police officers were waiting at their door. (DeFina, 31; Schneider, 36).

Plaintiff Romaldga Reed, awakened by the knocking, was about to answer the door when the telephone rang. She directed her son, plaintiff Howard Reed, Jr., to "get the door" while she answered the phone. (Reed, Jr., 17). Howard Reed, Jr., looked outside and observed defendants dressed in plain clothes and standing within ten feet of the house. (Reed, Jr., 13). Defendants approached the front door when they saw the activity within the house. (DeFina, 32). Through the closed door, Howard Reed, Jr., asked the police officers to identify themselves. Unable to hear their response, Howard Reed, Jr. opened the door. (Reed, Jr., 17).

While Howard Reed, Jr. was answering the door, his mother was engaged in a telephone conversation with an unidentified Sergeant. The sergeant identified himself as an officer of the medical unit of her husband's precinct and informed Mrs. Reed that two of his men were at her door. (Mrs. Reed, 18, 20). The sergeant then asked her if she knew where her husband was. When Mrs. Reed replied that she did not know, the sergeant asked her if it was "strange that you don't know where your husband is?" (Mrs. Reed, 18). Becoming concerned for her husband's well being, Mrs. Reed asked the sergeant why he was calling at such a late hour, and whether her husband was injured or dead. (Mrs. Reed, 19). The sergeant would not respond to Mrs. Reed's inquiries about her husband's condition. At this point the sergeant, calling from a pay phone, was disconnected.

During the course of Mrs. Reed's telephone conversation Howard Reed, Jr. had opened the front door. Defendants identified themselves as being from the "medical unit" and asked to come inside. (Reed, Jr., 18). Concerned for his father's well being, Howard Reed, Jr. allowed defendants into the house. (Reed, Jr., 22). Upon entering the house, one of the police officers began interrogating Howard Reed, Jr., with such

questions as "where is your father?" (Reed, Jr. 23). Although Howard Reed, Jr. responded that he did not know where his father was, the questioning continued. Howard Reed, Jr. was asked why his father was not at home and if it was unusual for his father to be out at such a late hour. (Reed, Jr., 23). Unable to locate Officer Reed in the house, defendants left without answering Howard Reed, Jr.'s questions concerning the purpose of their visit and the health of his father. (Reed, Jr. 26). The entire incident lasted only a few minutes. Defendants did not display their weapons and did not mention the subpoena. (Reed, Jr. 24–25).

Shortly after defendants had left, Mrs. Reed's telephone conversation with the sergeant ended. Mrs. Reed later described her condition at that time as "alarmed." She testified that after the entry she began to shake and her heart was pounding. (Mrs. Reed, 27). Mrs. Reed then called her husband's precinct for an explanation of the officers' behavior. Mrs. Reed was told that her husband was not at the precinct and, further, that there was no medical unit. (Mrs. Reed, 31). Mrs. Reed, doubting whether the visitors had been police officers, imagined that they had been "gangsters" seeking retribution against her husband. (Mrs. Reed, 31). Mrs. Reed therefore became afraid for the safety of both her children and her husband. (*Id.*) Mrs. Reed remained upset until her husband returned home, almost an hour later. (Mrs. Reed, 32).

The next morning, as Officer Reed left his house, he was approached by defendants, the policemen who had attempted to contact him the night before. After identifying themselves as sergeants, defendants spoke to Officer Reed about certain property that the police department had recovered during the city-wide blackout of 1978. They stated that there were allegations that police officers had misappropriated certain "blackout-property." (Reed, Sr., 15). Defendants then informed Officer Reed that they had a subpoena for him to appear before a Grand Jury investigating

the allegations, and reminded him that he could lose his job if he perjured himself before the Grand Jury. (Reed, Sr., 17). Defendants also reminded Officer Reed that one of his automobiles had numerous overdue parking tickets. (*Id.*) At this point in their conversation defendants offered Officer Reed the option of "working" for their investigation by wearing a hidden tape recorder and generating conversations about the "blackout-property" with other police officers. (Reed, Sr., 18). In return for his cooperation with the Field Internal Affairs Unit, defendants told Officer Reed he would not have to respond to the subpoena (Reed, Sr., 20). Rather than deciding immediately, Officer Reed requested a chance to think over his options. Later that afternoon, after defendants had left, Officer Reed telephoned them and stated that he would not "work" for them by wearing the hidden tape recorder. (Reed, Sr., 26).

Based upon these events, plaintiffs Howard Reed, Sr., Mrs. Romaldga Reed, and Howard Reed, Jr. filed suit against Sergeants Schneider, DeFina, and the City of New York. Plaintiffs allege a violation of their Fourth Amendment right to be free from unreasonable searches. Plaintiffs seek damages as a result of the alleged violation of their civil rights based upon 42 U.S.C. § 1983, the Civil Rights Act (§ 1983).

## II. Discussion

### A. The Action Against the City of New York

In order to bring a § 1983 suit against a municipality, the United States Supreme Court requires plaintiffs to allege (1) the deprivation of a constitutional right and (2) that the act that deprived plaintiffs of their constitutional right was either the result of an "official policy" of the municipality, or was the "custom" of such municipality, though not formally approved by the official decision making channels. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

### 1. Have Plaintiffs Alleged a Fourth Amendment Violation?

The first question that must be addressed is whether a mere entry into a home without a valid consent constitutes an unreasonable search for purposes of the Fourth Amendment. The Sixth Circuit has held that "entry ... is itself a search for purposes of the Fourth Amendment." *United States v. Blue Diamond Coal Co.,* 667 F.2d 510, 517–18 (6th Cir.1981) *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2298, 73 L.Ed.2d 1302 (1982). Similarly, a panel consisting of three judges of the Southern District of New York has held that "any unauthorized physical penetration is a search." *James v. Goldberg,* 303 F.Supp. 935, 940 (S.D.N.Y.1969), *rev'd on other grounds sub nom. Wyman v. James,* 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). In reversing the lower court, the Supreme Court indicated that if the administrative personnel had been police officers, an unreasonable search might have been found. *Id.* at 322–23, 91 S.Ct. at 388–89. Numerous Supreme Court holdings have emphasized the view that legitimate expectations of privacy may be strongest when the invasion is into one's own home. Private dwellings are "afforded the most stringent Fourth Amendment protection." *United States v. Martinez-Fuerte,* 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976).

In *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), a case involving the search of a private dwelling pursuant to a warrantless arrest, the Court found that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Id.* at 585, 100 S.Ct. at 1379 (quoting *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)). The Court also noted that "[a] greater burden is placed ... on officials who enter a home or dwelling without consent. Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured

by the Fourth Amendment." *Payton*, 445 U.S. at 587, 100 S.Ct. at 1380 (quoting *Dorman v. United States*, 435 F.2d 385, 389 (D.C.Cir.1970)).

The alleged actions of the defendants did not constitute a mere technical trespass. Technical trespasses have been found not to constitute unreasonable searches. *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) (investigation of unlawfully distilled spirits on grounds surrounding house); *Air Pollution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974) (health inspector enters outdoor premises to make visual inspection of chimney emissions). In these cases the Supreme Court has applied the "open fields" doctrine and found the Fourth Amendment right to be free from unreasonable searches did not apply to the grounds immediately surrounding a dwelling. *Id.* In *Ehlers v. Bogue*, 626 F.2d 1314 (5th Cir.1980), *cert. denied* 451 U.S. 909, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981), the Fifth Circuit found that mere visual inspections of the exterior of an apartment building and a nearby refuse dumpster, unaccompanied by any entry into an area from which the general public was excluded, did not constitute an unreasonable search. *Id.* (citing *Western Alfalfa's* "open fields" doctrine).

Similarly, the Court has held that there is no legitimate expectation of privacy in the interior of an automobile that may be viewed from outside the vehicle. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). In *Harbulak v. County of Suffolk*, 654 F.2d 194 (2d Cir.1981), the Second Circuit found that a motorist who alleged a § 1983 civil rights action based upon a police officer's reaching into the automobile and placing two unaccepted summonses on the dashboard was frivolous and that it was an abuse of discretion to deny an award of attorney's fees to the defendant. The court reasoned that the plaintiff was "driving along a public highway in plain view" and thus the officer's intrusion was not "a substantial one, of a kind that would be highly offensive to the ordinary reasonable man ..." *Id.* at 196

(quoting Restatement (Second) of Torts § 652B, comment d (1977)).

Here, the alleged actions of the defendants, in gaining entry into a home under false pretenses, exceed the limits of a technical trespass. Thus, in my view, the police officers' entry into plaintiffs' home constituted an unreasonable search if the finder of fact concludes that consent to enter was involuntarily obtained.

Viewing all materials submitted in a light most favorable to the plaintiffs, as required for the purposes of this motion, *Egelston v. State University College at Geneseo*, 535 F.2d 752 (2d Cir.1976), the plaintiffs have proferred sufficient proof that their constitutional right to remain free of unreasonable searches was violated. While defendants maintain that Howard Reed, Jr. consented to the entry of the police officers, Howard Reed, Jr., in his deposition, denies any voluntary consent. The Supreme Court has recently held that, "where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). The question of the voluntary nature of Howard Reed, Jr.'s consent constitutes a material fact in issue that can only be decided by the finder of fact. Summary judgment cannot be granted when there exists a genuine issue of material fact. *American International Group, Inc. v. London American International Corp., Limited*, 664 F.2d 348 (2d Cir.1981); *Jaroslawicz v. Seedman*, 528 F.2d 727 (2d Cir. 1975); *Harlee v. Hagen*, 538 F.Supp. 389 (E.D.N.Y.1982).

2. Have Plaintiffs Alleged Municipal Liability?

Assuming for the purposes of this summary judgment motion that defendant police officers did violate plaintiffs' constitutional rights, the second question to be

decided is whether the acts that deprived plaintiffs of their constitutional rights were the result of a "policy or custom" of the municipality. *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Defendant, the City of New York, correctly argues that no evidence has been proffered to show that such a "policy or custom" did exist, and that the City therefore cannot be found liable under § 1983. While plaintiffs have alleged that the City knew of and impliedly sanctioned the strong arm tactics employed by the Internal Affairs officers to coerce the cooperation of fellow police officers, they have not alleged, and discovery has not revealed, any facts that demonstrate the existence of such a custom or policy.

The Second Circuit has stated that an official policy cannot ordinarily be inferred from a single incident of illegality. *Turpin v. Mailet,* 619 F.2d 196 (2d Cir.), *cert. denied sub nom. Turpin v. City of West Haven,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). Had the City announced an illegal policy, either in writing or orally, a single illegal act performed as a result of such policy would be sufficient to state a valid cause of action under the Act. *Turpin,* 619 F.2d at 199. However, when a plaintiff seeks to infer an official policy from the acquiescence of a municipality, evidence of more than a single incident of illegality is generally required. *Id.* at 202. *See also Batista v. Rodriguez,* 702 F.2d 393 (2d Cir.1983).

The Second Circuit has held that under special circumstances a single instance of illegality may be sufficient to infer an official policy from the acquiescence of a municipality in the alleged illegal act. *Owens v. Haas,* 601 F.2d 1242 (2d Cir.1979), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Cattan v. City of New York,* 523 F.Supp. 598 (S.D.N.Y.1981). The circumstances that lead to municipal liability generally involve a failure of supervision or lack of training so severe as to reach the level of gross negligence or deliberate indifference to the deprivation of a plaintiff's constitutional rights. *Owens,* 601 F.2d at 1246; *Turpin,* 619 F.2d at 202. The Second Circuit has found that these special

circumstances exist when the single incident is an "unusually brutal or egregious beating administered by a *group* of municipal employees ..." *Turpin,* 619 F.2d at 202 (emphasis added). The alleged acts of Sergeants Schneider and DeFina do not constitute the special circumstances contemplated by the Second Circuit. A mere entry without consent, though perhaps a constitutional violation, does not rise to the level of gross negligence or deliberate indifference as required by *Owens.*

The Federal Rules of Civil Procedure require that an adverse party to a summary judgment motion "may not rest upon the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). One of the purposes of summary judgment is to determine whether the parties can provide evidence in support of their version of the facts. *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969). In addition, a party must make the existence of credible evidence known if that evidence supports its position. *E.P. Hinkel & Co., Inc. v. Manhattan Co.,* 506 F.2d 201, 205 (D.C.Cir.1974). *See also Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). Plaintiffs have failed to allege any specific facts which demonstrate that the City of New York condones these types of incidents by policy or custom. Nor have plaintiffs shown that the City of New York has acquiesced when presented with similar incidents of illegality on previous occasions. In the absence of such evidence no material issue of fact exists to be tried. Thus, it is respectfully recommended that the motion for summary judgment on behalf of the City of New York be granted.

## B. The Action Against the Individuals

### 1. Sergeant DeFina

Plaintiffs have alleged specific facts which, if established, would constitute a violation of plaintiffs' Fourth Amendment right to be free from unreasonable

searches. Sergeant DeFina, it is alleged, entered the Reed household without first obtaining the valid consent of Howard Reed, Jr. The alleged unlawful entry of Sergeant DeFina cannot be determined on this summary judgment motion because the factual question of consent is pending. *Quinn*, 613 F.2d at 444–5.

### 2. Sergeant Schneider

The circumstances of Sergeant Schneider's alleged entry into the Reed household also remain in dispute. Defendant Sergeant Schneider contends that he was the caller who spoke with Mrs. Reed while Sergeant DeFina was entering the house. (Schneider, 38). Mrs. Reed remains unable to recall the name of the sergeant with whom she spoke. (Mrs. Reed, 18). However, Howard Reed, Jr. identified Sergeant Schneider as the police officer who accompanied Sergeant DeFina into his home. (Reed, Jr., 19). This factual dispute is material and must be resolved by the finder of fact. Summary judgment therefore is inappropriate. *Quinn*, 613 F.2d at 444–45. Furthermore, with respect to both Sergeant DeFina's and Sergeant Schneider's motions for summary judgment, it must be noted that summary judgment is a drastic remedy and should be applied only sparingly. *Egelston*, 535 F.2d at 754; *Auletta v. Tully*, 576 F.Supp. 191 (N.D.N.Y.1983), *aff'd* 732 F.2d 142 (2d Cir.1984); *Sobel v. Yeshiva University*, 477 F.Supp. 1161 (S.D. N.Y.1979). Here the existence of factual question precludes summary relief.

### III. Conclusion

Because plaintiffs have alleged specific acts by Sergeants DeFina and Schneider which, if established, would constitute a violation of plaintiffs' Fourth Amendment right to be free from unreasonable searches, it is respectfully recommended that Sergeant DeFina's and Sergeant Schneider's motions for summary judgment be denied. Because plaintiffs have failed to allege specific facts that demonstrate an official policy or custom on the part of the City of New York to violate plaintiffs' con-

stitutional rights, it is respectfully recommended that the City of New York's motion for summary judgment be granted.

A copy of this Report and Recommendation is being mailed today to all parties, who are hereby advised that objections to the report may be served and filed with the district court, with a copy to me, within ten (10) days.