[No. 64206-1. En Banc.]
Argued February 12, 1997.     Decided September 25, 1997.

JAMES KALMAS, ET AL., *Respondents*, v. DONALD WAGNER, ET AL., *Petitioners*.

*John W. Ladenburg, Prosecuting Attorney*, and *Kitty-Ann Van Doorninck, Deputy*, for petitioners.

*Neil J. Hoff & Associates*, by *Ralph Seeley* and *Paul A. Lindenmuth*, for respondents.

*Jeffrey L. Needle* on behalf of the American Civil Liberties Union, amicus curiae.

JOHNSON, J. — Two deputy sheriffs were sued under 42 U.S.C. § 1983 after one of them accompanied a property manager into a residence at the request of the tenant. The Court of Appeals reversed the trial court's dismissal of the suit. We reverse the Court of Appeals and hold there was no unreasonable search and, therefore, no constitutional violation on which to base a civil rights action.

## FACTS

Plaintiffs James Kalmas and Kyra Sharpe signed a home rental agreement in September 1990, and initialed a "right to enter" provision contained in that agreement. This provision stated: "Lessor hereby reserves, and the Lessee hereby grants to the Lessor or his agents, the right to enter said leased premises at reasonable times, for the purpose of making repairs or to inspect the premises, to show the dwelling to prospective tenants after notice of termination." Clerk's Papers at 36.

On May 10, 1991, a notice to terminate tenancy on May 31 was sent to Kalmas and Sharpe. On May 15, Marilyn Kay Russi, the property manager, served notice on Kalmas and Sharpe, informing them the residence would be shown by a real estate agent the following day, May 16, between 1:30 and 3:30 p.m.

The following day, at approximately 1:30 p.m., Russi arrived at the residence with a real estate agent, a prospective tenant/purchaser, and a fellow employee. Kalmas came out of the house, closed the door behind him, and told everyone they could not enter. Kalmas then told the group they would be breaking the law if they entered, he would sue them for breaking and entering and burglary, and he had called the police and fire departments to have them all arrested. According to Russi, Kalmas was extremely foul mouthed and rude. Russi reminded Kalmas of the notice he received and explained that under the Landlord-Tenant Act, they were entitled to enter. Kalmas continued to refuse entry, so Russi prepared a

"Notice of Violation of RCW 59.18.150 — Denial of Entry" form.

Meanwhile, Kyra Sharpe had called 911 and requested assistance. The real estate agent and his client left. A fire department official arrived at the scene and then also left after a short discussion regarding a hole in the ground. The police arrived.

Two deputy sheriffs, Donald Wagner and James Jones, arrived within a few minutes of one another. According to Wagner, Kalmas was yelling, screaming, and arguing with the two women when he arrived at the residence. Wagner spoke with the women, who explained the circumstances and showed him the paperwork regarding their entry of the residence. Wagner told Kalmas the paperwork appeared to be in order, and Kalmas admitted he had received notice, but he continued to deny entry to those present. The officers explained to Kalmas he did not have the legal right to bar entry if he had been given 24-hours' notice, and, according to Kalmas, the officers threatened to arrest him if he did not permit entry to the residence. Kalmas then agreed that the two women could enter the residence as long as one of the officers accompanied them to prevent any potential theft or damage. Kalmas stepped aside, and the two women, accompanied by Deputy Jones, entered the residence. The three were inside for less than one minute.

Both officers state their purpose was to keep the peace and prevent any kind of confrontation between the parties. Both women state they feared for their safety had the officer not accompanied them.

Kalmas and Sharpe filed a 42 U.S.C. § 1983 action against the officers.[1] Both parties moved for summary judgment, and the trial court granted the officers' motion and dismissed the suit. The Court of Appeals reversed and

---

[1]Neither party has included the complaint in the record on appeal. Plaintiffs stated during the Court of Appeals oral argument that the complaint also contained charges of trespass and state constitutional violations. Plaintiffs explicitly abandoned the trespass charge.

remanded. *Kalmas v. Wagner*, 82 Wn. App. 105, 915 P.2d 546 (1996).

## ANALYSIS

■ An appellate court reviews summary judgment decisions de novo, engaging in the same inquiry as the trial court, and viewing facts in a light most favorable to the nonmoving party. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). If reasonable minds can reach different conclusions, summary judgment is improper. *Chelan County Sheriffs' Ass'n v. Chelan County*, 109 Wn.2d 282, 294-95, 745 P.2d 1 (1987).

■ To establish a cause of action under 42 U.S.C. § 1983,[2] a plaintiff must show (1) the defendant violated a federal constitutional or statutory right, and (2) the defendant acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed 2d 662 (1986); *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 11, 829 P.2d 765 (1992). A plaintiff who proves these elements is entitled to at least nominal damages. *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).

Kalmas brings his § 1983 action based on an alleged violation of his Fourth Amendment rights, which, he asserts, occurred with the entry of the officers and property manager into his rented residence. The Fourth Amendment provides in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." A search and seizure that violates the Fourth Amendment is actionable under 42 U.S.C. § 1983. *Soldal*

---

[2]42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

*v. Cook County*, 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992); *Hocker v. Woody*, 95 Wn.2d 822, 824, 631 P.2d 372 (1981).

Under the Fourth Amendment, a search occurs if the government intrudes upon a subjective and reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 351-52, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State v. Young*, 123 Wn.2d 173, 181, 867 P.2d 593 (1994). By its terms, it is violated only by searches that are unreasonable. A tenant has a reasonable expectation of privacy in the interior of the residence, *City of Seattle v. McCready*, 124 Wn.2d 300, 304, 877 P.2d 686 (1994) (citing *Chapman v. United States*, 365 U.S. 610, 616-17, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961)), however, the Fourth Amendment applies only to actions of governmental officials, and not to private conduct. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). Thus, Kalmas, in order to establish a Fourth Amendment violation, must prove either (1) Deputies Jones and Wagner conducted an unreasonable search, or (2) Russi and her assistant's entry into the residence constituted state action amounting to an unreasonable search.

We turn first to the question of whether Deputies Wagner and Jones conducted an unreasonable search for purposes of the Fourth Amendment. Under 42 U.S.C. § 1983, officers are liable for unlawful searches and seizures. *Monroe v. Pape*, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961); *Hocker*, 95 Wn.2d at 824. Kalmas and Sharpe, as tenants, have a reasonable expectation of privacy against government intrusion into their residence. Assuming for purposes of argument that a jury could find the brief, invited entry of the deputy into the residence constituted a search, we must then ask whether this "search" was unreasonable.

Whether an encounter made for noncriminal noninvestigatory purposes is reasonable depends on a balancing of the individual's interest in freedom from police interference against the public's interest in having the po-

lice perform a "community caretaking function." *State v. Mennegar*, 114 Wn.2d 304, 313, 787 P.2d 1347 (1990). Here, Plaintiffs themselves asked the police to perform a caretaking function. Sharpe called 911 asking for police assistance, and Kalmas asked the deputy to accompany the property manager and her assistant into the dwelling to guard against any possible theft or damage. Deputy Jones then entered the residence for less than one minute. Nothing was disturbed, no evidence was seized, no one was hurt. Under these circumstances, where a plaintiff invites a deputy into his residence in order to perform a caretaking function, we cannot find that an unreasonable search occurred.

Kalmas also argues his Fourth Amendment rights were violated when Russi and her assistant entered the residence. Kalmas relies on *Specht v. Jensen*, 832 F.2d 1516 (10th Cir. 1987) for the proposition that when an officer facilitates a search by a private party, a Fourth Amendment violation occurs. In *Specht*, the plaintiffs successfully brought a § 1983 claim against police officers for damages arising from an alleged unlawful search of their home and office. Jacobs, a private citizen, had a state court order of possession for a computer and a writ of assistance directing any sheriff to assist with obtaining the computer. Jacobs, with the police, entered Specht's office to search for the computer. They entered Specht's office, opening doors to do so, and used a flashlight to look into corners. After not finding the computer at that location, Jacobs and the police went to Specht's residence. Mrs. Specht invited one of the officers into her home and Jacobs, along with three others, entered as well. Jacobs stated he had a search warrant to seize a stolen computer, and one of the officers told Mrs. Specht if she obstructed Jacobs or did not cooperate, she would be arrested and imprisoned. The officer also told her she had no right to call her lawyer unless Jacobs agreed to the call. The men were at the home for approximately 30 to 40 minutes. *Specht*, 832 F.2d at 1519-20.

The court stated the test for finding a Fourth

Amendment violation when police participate in searches undertaken by private individuals as follows: "When a government official affirmatively facilitates or encourages an unreasonable search performed by a private person, a constitutional violation occurs." *Specht*, 832 F.2d at 1523. Because the officers had driven a police car to the office building, an officer asked for the key to the building, an officer threatened to take Mrs. Specht to jail, and an officer told Mrs. Specht she could not call her lawyer without Jacobs' consent, the court found sufficient evidence of participation by the officers in order to support liability under § 1983.

In the case at hand, the government officials did not affirmatively facilitate or encourage an unreasonable search performed by a private person. Even if we assume Russi and her assistant conducted an unreasonable search, the conduct of Deputies Wagner and Jones does not rise to the level of an affirmative facilitation or encouragement of that search. The deputies' conduct was much different from that of the officers in *Specht*. The same close nexus between the police and a private individual is not present here. Deputies Wagner and Jones were summoned by Kalmas himself, and were not called upon by the property manager. The only entrance into the residence was at Kalmas' request. The deputies did not initiate the property manager's actions. Any interest Wagner and Jones had in the relationship between Kalmas and Russi was merely a peacekeeping interest. Also, the threat to arrest in this case arose out of a situation in which Kalmas was behaving in an unruly fashion. An officer may arrest one who breaches the peace or threatens to do so. *Pavish v. Meyers*, 129 Wash. 605, 607, 225 P. 633, 34 A.L.R. 561 (1924).

We, therefore, conclude the conduct of Deputies Wagner and Jones did not form the requisite nexus with the conduct of Russi and her assistant in order to affirmatively facilitate or encourage an unreasonable search. Even more to the point, however, we hold Russi and her assistant did not conduct an unreasonable search.

■ Although it is well established that a tenant has a reasonable expectation of privacy in his or her residence against any government intrusion, we now inquire whether that same tenant has a reasonable expectation of privacy against a property manager and her assistant when the landlord has taken proper steps under the Landlord-Tenant Act to exhibit the premises to a potential tenant or buyer.

The statute at issue in this case provides, in pertinent part:

(1) The tenant shall not unreasonably withhold consent to the landlord to enter into the dwelling unit in order to . . . exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workers, or contractors.

. . . .

(3) The landlord shall not abuse the right of access or use it to harass the tenant. Except in the case of emergency or if it is impracticable to do so, the landlord shall give the tenant at least two days' notice of his or her intent to enter and shall enter only at reasonable times. The tenant shall not unreasonably withhold consent to the landlord to enter the dwelling unit at a specified time where the landlord has given at least one day's notice of intent to enter to exhibit the dwelling unit to prospective or actual purchasers or tenants . . . .

(4) The landlord has no other right of access except by court order, arbitrator or by consent of the tenant.

(5) A landlord or tenant who continues to violate this section after being served with one written notification alleging in good faith violations of this section listing the date and time of the violation shall be liable for up to one hundred dollars for each violation after receipt of the notice . . . .

RCW 59.18.150.

This statute gives a landlord a limited right to invade the privacy of a tenant in his or her residence for limited purposes, one of which is to exhibit the dwelling. The rental agreement signed by the Plaintiffs contains similar provisions. If the scope of the entrance does not exceed

these purposes, no unreasonable search occurs. We would agree if the property manager exceeded the limited scope permitted, a cause of action would arise. Here, however, no evidence is presented showing anything other than a brief entrance and a brief look at the interior of the residence. Nothing else occurred, was disturbed, was taken, or was damaged. Under the statute, in order to exhibit the dwelling, the landlord must provide one day's notice to the tenant. Russi provided the requisite statutory notice in this case. Thus, we hold when proper notice was given for entry, Kalmas and Sharpe had no reasonable expectation other than that entry for inspection would occur.

Because we find that no violation of the Fourth Amendment occurred, we need not address the parties' arguments regarding the under color of law requirement for 42 U.S.C. § 1983, or qualified immunity. We reverse the Court of Appeals.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, and TALMADGE, JJ., concur.


ALEXANDER, J. (dissenting) — I do not quarrel with the majority's recitation of the facts or its description of the elements necessary to establish a cause of action under 42 U.S.C. § 1983. I disagree, however, with its conclusion that respondents Kalmas and Sharpe failed to establish the first element of their § 1983 suit—that their federal constitutional rights were violated. In my view, their claim that their Fourth Amendment rights were violated may be premised on the entry into their home by both the property manager, Russi, and Deputy Jones because both entries, when viewed factually in the light most favorable to Kalmas and Sharpe, were "unreasonable." Moreover, I am satisfied that they have also presented a triable issue with respect to the second element of their § 1983 claim, and that the deputies are not, as a matter of law, qualifiedly immune. I would, therefore, affirm the Court of Ap-

peals decision reversing the summary judgment dismissing respondents' lawsuit. Accordingly, I dissent.

## ANALYSIS

We may affirm a trial court's order dismissing a case on summary judgment only if, after considering the facts in a light most favorable to the nonmoving party, we conclude that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). "Summary judgment exists to examine the sufficiency of legal claims and narrow issues, not as an unfair substitute for trial." *Babcock v. State*, 116 Wn.2d 596, 599, 809 P.2d 143 (1991).

Kalmas and Sharpe are entitled to go to trial on their § 1983 claim against Pierce County Deputy Sheriffs Jones and Wagner unless, construing the facts of this case in their favor, we can say as a matter of law that the deputies did not (1) proximately cause the deprivation of any of Kalmas and Sharpe's federal constitutional or statutory rights,[3] or (2) did not act under color of the power vested in them as government officers. *See Harris v. City of Roseburg*, 664 F.2d 1121, 1125, 65 A.L.R. Fed. 792 (9th Cir. 1981) (setting forth elements of § 1983 claim); *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 11, 829 P.2d 765 (1992) (same). The majority did not reach the question of whether the deputies acted under color of law, having determined as a matter of law that the deputies did not violate Kalmas and Sharpe's Fourth Amendment rights. For reasons set forth hereafter, I disagree with that determination, concluding that the deprivation of Kalmas and Sharpe's

---

[3]State and federal courts have "concurrent jurisdiction" over a § 1983 claim, *Sintra*, 119 Wn.2d at 11, which a plaintiff may therefore assert in state or federal court. 2 RODNEY A. SMOLLA, FEDERAL CIVIL RIGHTS ACTS § 14.09(1), at 14-112 (3d ed. 1994).

Fourth Amendment rights can be premised on the acts of either Russi and her assistant[4] or Deputy Jones.

## A. Entry of Russi

The majority correctly concludes that because the Fourth Amendment applies only to government officials, Majority op. at 216 (citing *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984)), in order to base their claim against the deputies on Russi's entry into the residence, Kalmas and Sharpe must demonstrate that the entry was governmental action amounting to an unreasonable search or seizure. Where I disagree with the majority is in its determination that the conduct of Deputies Wagner and Jones did "not rise to the level of an affirmative facilitation or encouragement of [Russi's] search." Majority op. at 218. The majority's conclusion in that regard is difficult to understand, particularly in light of its seeming endorsement of the Tenth Circuit's[5] holding, in a factually similar case, that a Fourth Amendment violation occurs "[w]hen a government official affirmatively facilitates or encourages an unreasonable search performed by a private person . . . ." *Specht v. Jensen*, 832 F.2d 1516, 1523 (10th Cir. 1987) (quoted in Majority op. at 218 ).[6]

Construing the facts in a light most favorable to Kal-

---

[4]The actions of Russi and her assistant will be attributed for simplicity to Russi alone. Both are considered "the landlord" for purposes of the Residential Landlord-Tenant Act of 1973. See RCW 59.18.030(2) ("landlord" includes lessor and lessor's agents).

[5]The Tenth Circuit is not alone in its views. The Eleventh Circuit noted in another § 1983 action, *Booker v. City of Atlanta*, 776 F.2d 272, 274 (11th Cir. 1985), that a police presence, even absent active participation, could provide an intimidating "cachet of legality," establishing a constitutional violation. *See also Soldal v. Cook County*, 506 U.S. 56, 60 n.6, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992) (declining to review Seventh Circuit's conclusion that officers' assistance in eviction was state action supporting § 1983 claim).

[6]The effect of federal case law on our interpretation of § 1983 claims appears to be a novel issue in Washington. Federal courts and courts from other states have concluded that state courts are not required to follow the construction of federal law by federal district or circuit courts. See 1 STEVEN H. STEINGLASS, SECTION 1983 LITIGATION IN STATE COURTS § 5.4, at 5-22 to 5-30 (1987), and cases cited therein. When interpreting provisions of state statutes, we often look to federal

mas and Sharpe, as we must, it is apparent that Kalmas allowed Russi to enter his home *only* because the deputies threatened to arrest him if he did not. Indeed, prior to the arrival of the deputies, Kalmas told Russi that he would not admit her into his residence, despite Russi's protestations that she was authorized to enter by virtue of the Landlord-Tenant Act and the lease agreement. It was only when the deputies arrived and threatened to arrest Kalmas if he did not let Russi enter the residence that he relented and admitted Russi. In an affidavit, Kalmas stated, "I would not have permitted any person to enter my home that day but for the threat of arrest if I did not." Clerk's Papers at 70. Based on this showing, I cannot say as a matter of law that Russi's entry did not constitute state action amounting to a Fourth Amendment violation. *Cf. Specht*, 832 F.2d at 1523 ("issue whether police officer did more than merely 'stand by in case of trouble' involves *factual determination*") (citing *Harris*, 664 F.2d at 1127) (emphasis added).

The majority strains to find ways in which *Specht* may be distinguished. It argues that, unlike in *Specht*, the deputies here were "summoned by Kalmas himself." Majority op. at 218. Sharpe[7] did not, however, "summon" the deputies for the purpose of having them enter the residence or to aid someone else's entry. Rather, she called for their assistance in keeping Russi and her confederates out of the leased premises. Once there, the deputies threatened to

case law interpreting similar provisions contained in federal statutes. *Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n*, 112 Wn.2d 278, 283, 770 P.2d 624, 87 A.L.R.4th 627 (1989) ("[W]hile federal decisions are not controlling, they are persuasive authority when construing state acts which are similar to the federal act."); *see, e.g., Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 464, 938 P.2d 827 (1997) (considering "persuasive federal cases directly on point" in construing state labor statute). I see no reason why federal cases should not be given similar weight when we are construing a federal statute, particularly in light of the federal courts' "expertise and experience" in dealing with § 1983 claims. 1 STEINGLASS, *supra*, at 5-27; *see generally* 1 STEINGLASS, *supra*, at 5-27 to 5-29; *cf. Smith v. American Mail Line, Ltd.*, 58 Wn.2d 361, 365-66, 363 P.2d 133 (1961) (noting that federal court's decisions interpreting Jones Act, 46 U.S.C. § 688, control in state court actions brought under that statute).

[7]Sharpe, not Kalmas, called 911.

arrest Kalmas unless he permitted Russi to enter. This effectively allowed Russi to accomplish that which she had failed to accomplish without the show of authority.

The majority asserts, additionally, that *Specht* is irrelevant because "[t]he *only* entrance into the residence was at Kalmas' request." Majority op. at 218 (emphasis added). The record simply does not support this statement. As noted above, neither Kalmas nor Sharpe invited Russi into the residence.

The majority also attempts to distinguish *Specht* on the ground that "[t]he deputies did not initiate the property manager's actions." Majority op. at 218. At least one commentator has noted, however, that "[i]t is not essential that the government official be involved in the endeavor at the very outset; . . . it is 'immaterial' whether the government official 'originated the idea or joined in it while the search was in progress' . . . ." 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 1.8(b), at 223-24 (3d ed. 1996); *see also Stapleton v. Superior Court*, 70 Cal. 2d 97, 447 P.2d 967, 970, 73 Cal. Rptr. 575 (1968) ("[T]he police need not have requested or directed the search in order to be guilty of 'standing idly by'; knowledge of the illegal search coupled with a failure to protect the petitioner's rights against such a search suffices."). At any rate, the officers in *Specht* no more "initiated" the private action in that case than did the deputies here. To the contrary, the private citizen in *Specht*, Jacobs, contacted the officers. Once the group arrived, Ms. Specht invited one of the officers, Owens, into her home. Thus, it was not the presence of Owens, as a law enforcement officer, inside the residence that led the court to conclude that there was a triable issue with respect to whether he facilitated the Fourth Amendment violation. Instead, the court cited Owens's "threats to take [Ms.] Specht to jail if she obstructed Jacobs' search" as the culpable action. *Specht*, 832 F.2d at 1524. This is precisely the type of conduct at issue here.

Finally, the majority asserts that the deputies did not

facilitate Russi's entry because their threat to arrest was motivated by Kalmas's unruly behavior. This assertion might be justified had Kalmas's behavior in fact been the impetus for the deputies' threat. It was not. They told Kalmas that he would be subject to arrest unless he allowed Russi to enter the residence. They did not threaten to arrest him because he was acting unruly. Moreover, even if the deputies' motivation was to keep the peace between Kalmas and Russi, because the parties were arguing outside the residence, entry did not further that goal.

Furthermore, I fail to see how Kalmas's actions in barring Russi from the residence could amount to a breach of the peace when, under both the common law and the Residential Landlord-Tenant Act of 1973, a tenant ultimately determines whether the landlord may enter the leased property during the term of the lease. The RESTATEMENT (SECOND) OF PROPERTY, for example, states that a necessary incident of a leasehold is the transfer from the lessor to the tenant of a present right of possession. RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 1.2, at 9-10 (1977). This does not mean, of course, that the landlord cannot maintain an action pursuant to the Landlord-Tenant Act to gain entry to the leased premises. Indeed, a provision in the Landlord-Tenant Act, RCW 59.18.150(1), indicates that a tenant "shall not unreasonably withhold consent to the landlord to enter into the dwelling . . . ." The act does not, however, permit the landlord to use self-help in gaining entry to the leased premises. The only remedy for a violation of that statute is a $100 sanction for each violation. RCW 59.18.150(5). It follows from the provision of this civil remedy for the tenant's "unreasonable" refusal to admit the landlord that the tenant can bar the landlord from entering even when the landlord is entitled to enter:

> [E]ven if consent is unreasonably withheld, landlords still do not have a right to immediate access. Unless landlords have the tenants' consent, entry can be had only by court order or by the decision of an arbitrator.

226

SIDNEY J. STRONG, LANDLORD/TENANT RIGHTS FOR WASHINGTON 64 (4th ed. 1984) (emphasis added).

In short, Russi's sole remedy for Kalmas's violation of the lease and the Landlord-Tenant Act, if any,[8] was a civil action to gain entry and/or obtain sanctions under RCW 59.18.150(5). Arrest of the tenant or forced entry by the landlord were not options for any civil wrong that Kalmas and Sharpe may have committed. *Cf.* RCW 10.31.100 (setting forth limited grounds for warrantless arrest).

B. "Expectation of Privacy"

Without citation, the majority concludes that a tenant has no "reasonable expectation of privacy" vis-à-vis a landlord who "has taken proper steps under the Landlord-Tenant Act to exhibit the premises to a potential tenant or buyer." Majority op. at 219. A flaw in this reasoning is that a person's "reasonable expectation of privacy" is a pertinent inquiry only in reference to the Fourth Amendment, which, as the majority points out, protects only against governmental intrusions. Thus, regardless of Kalmas's "expectations," had Russi entered the residence on her own, she would have been engaging in a criminal and/or civil trespass, not a violation of Kalmas's Fourth Amendment rights. Consequently, the majority's discussion of Kalmas's expectation of privacy has significance only in reference to Russi's entry as facilitated by the deputies. In light of the majority's conclusion that Deputies

---

[8]RCW 59.18.150(3) provides:

"The landlord shall not abuse the right of access or use it to harass the tenant. Except in the case of emergency or if it is impracticable to do so, the landlord shall give the tenant at least *two days' notice of his or her intent to enter* and shall enter only at reasonable times. The tenant shall not unreasonably withhold consent to the landlord to enter the dwelling unit at a specified time *where the landlord has given at least one day's notice of intent to enter to exhibit the dwelling unit to prospective or actual purchasers or tenants.*" (Emphasis added.) By the time the deputies arrived, the prospective buyers or tenants had left. Thus, at the time the deputies threatened to arrest Kalmas, Russi was no longer attempting to show the unit to a prospective tenant or purchaser, and the notice she had given Kalmas was insufficient under RCW 59.18 to entitle her to enter the residence for some other purpose absent an emergency.

Wagner and Jones did not facilitate Russi's entry onto the leased premises, the fact that it even discusses this issue is curious. In any case, its analysis of the issue directly conflicts with our case law and with United States Supreme Court precedent. In *City of Seattle v. McCready*, 124 Wn.2d 300, 877 P.2d 686 (1994), we unequivocally stated that "the tenant, not the landlord, has the privacy interest in the leased premises . . . ." *McCready*, 124 Wn.2d at 306. In *Chapman v. United States*, 365 U.S. 610, 616-17, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961), a case in which a tenant successfully challenged a warrantless search carried out with the landlord's consent, the Supreme Court held that "the landlord had no authority to consent to a search of property leased to and occupied by others; the tenant enjoyed the privacy right in the leased premises, and only the tenant could waive that right." *McCready*, 124 Wn.2d at 304 (discussing *Chapman*); *see also* 3 LAFAVE, *supra*, § 8.5(a), at 775 ("[A] lessor who enters into a lease granting the lessee exclusive possession over a certain area may not, during the period of the lease, give a consent to a police search of that area which will be effective against the lessee."). The law does not change when the warrantless search is made for noncriminal investigatory purposes: "In the realm of housing code inspections, the Court reached the same result: without the tenant's consent, a warrant was necessary to authorize an inspection of rented premises." *McCready*, 124 Wn.2d at 304 (referring to *Camara v. Municipal Court*, 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)). By its holding, the majority allows a landlord and the police to do together what neither could do alone; invade a tenant's home with impunity.

C. Entry of Deputy Jones

The majority asserts that Sharpe's phone call to 911 and the fact that "[n]othing was disturbed, no evidence was seized, [and] no one was hurt" support its conclusion that Deputy Jones's search was not unreasonable. Major-

ity op. at 217. I disagree. The degree of chaos or damage that the police inflict on a person's home is not a relevant inquiry in determining whether a Fourth Amendment violation has occurred. *See United States v. Blue Diamond Coal Co.*, 667 F.2d 510, 517-18 (6th Cir. 1981) ("entry . . . is itself a search for purposes of the Fourth Amendment"); *Reed v. Schneider*, 612 F. Supp. 216, 220-21 (E.D.N.Y. 1985) (Because "[f]reedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment"); *Payton v. New York*, 445 U.S. 573, 587, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (the mere entry into a home without consent constitutes an unreasonable search under the Fourth Amendment). Moreover, as discussed above, Sharpe called 911 to ask for assistance in keeping Russi out of the residence. Generally, law enforcement officers are able to constitutionally make a warrantless entry into the home of a 911 caller because of the emergency exception to the Fourth Amendment. *See State v. Angelos*, 86 Wn. App. 253, 936 P.2d 52 (1997). Here, however, there was no emergency that necessitated the presence of the deputies inside the residence when they arrived. The mere act of calling 911 should not ipso facto entitle police to enter the caller's home.

Finally, I disagree that the fact Kalmas invited Deputy Jones into the residence or the officers' purported need to "keep the peace" justified Deputy Jones's entry. It is clear that Kalmas consented to Deputy Jones's entry into the residence only because the entry of Russi had been coerced by the deputies. While consent to a search is a recognized exception to the Fourth Amendment warrant requirement, *State v. Hastings*, 119 Wn.2d 229, 234, 830 P.2d 658 (1992), a search does not satisfy the "constitutional safeguards of the Fourth Amendment" if consent "was obtained by the exploitation of a prior illegality," *State v. Jensen*, 44 Wn. App. 485, 489 n.1, 723 P.2d 443, *review denied*, 107 Wn.2d 1012 (1986); *accord* 3 LAFAVE, *supra*, § 8.2(d), at 655-56. Having concluded that the deputies violated Kalmas and Sharpe's Fourth Amendment rights by forcing them to admit Russi, I would hold that the

consensual entry of Deputy Jones resulted from that prior illegality. By the same token, the only reason that the deputies might have needed to preserve the peace between Russi and Sharpe *inside* the residence was because the deputies forced Kalmas to let Russi enter.

In sum, I believe that a triable issue was presented as to whether Kalmas and Sharpe's Fourth Amendment rights were violated by the entry into the residence by Russi and Deputy Jones. Consequently, I would reach the remaining issues presented by this appeal that the majority found unnecessary to address. In respect to those issues, it is my view that the Court of Appeals correctly determined that the deputies are not entitled to qualified immunity and that Kalmas and Sharpe also presented a triable issue with respect to the second element of their § 1983 action. I would, therefore, affirm the Court of Appeals and remand for trial. Because the majority does otherwise, I dissent.

MADSEN and SANDERS, JJ., concur with ALEXANDER, J.